## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEFFREY WASS and MARK SMITH, individually and on behalf of a class of others similarly situated, | ) ) ) | |
| | ) | Case No. 09-CV-2254 JWL/KGS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NPC INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NPC INTERNATIONAL, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' Complaint alleges that Defendant NPC International, Inc. ("NPC") fails to adequately reimburse its pizza delivery drivers for the expenses they incur delivering pizzas for NPC, and as a result, NPC pays them less than minimum wage in violation of the Fair Labor Standards Act and the Colorado Minimum Wage of Workers.

NPC seeks *judgment* in its favor on Counts I and II of Plaintiffs' Complaint based on its contention that these claims are implausible and inadequately pled. Even if true, NPC would only be entitled to dismissal with leave to re-plead, not judgment. Moreover, NPC contends that Plaintiffs' claims are limited to comparing NPC's mileage reimbursement rates to the IRS mileage reimbursement rate. But Plaintiff's Complaint does not even mention the IRS reimbursement rate; and is by no means limited to such a measure of damages. NPC's motion should thus be denied in its entirety.

# I.  BRIEF FACTUAL BACKGROUND

NPC is the largest Pizza Hut franchisee in the world, currently operating approximately 1,161 Pizza Hut restaurants in 28 states.  First Am. Compl, ¶¶ 1, 6.  Each of NPC's Pizza Hut restaurants employs delivery drivers like the Plaintiffs who are primarily responsible for delivering pizzas and other food items to customers' homes or workplaces.  *Id.* at ¶¶ 7, 8, 12.

NPC requires its delivery drivers to maintain and pay for operable, safe and legally-compliant automobiles to use in delivering NPC's pizza and other food items, which includes purchasing gasoline, vehicle parts and fluids, automobile repair and maintenance services, and automobile insurance, and suffer automobile depreciation ("automobile expenses"), all for the primary benefit of NPC.  *Id.* at ¶ 17.  In addition, NPC requires the delivery drivers to incur other job-related expenses, such as cellular telephone and cellular telephone services, uniform items including pants and shoes, dry cleaning and laundering services, and maps, flashlights and batteries ("job-related expenses), again all for the primary benefit of NPC.  *Id.*.

NPC paid Plaintiffs and other delivery drivers an hourly wage at or about the federal or state minimum wage plus a set amount for each delivery as a partial reimbursement for automobile expenses.  *Id.* at ¶18.  NPC's reimbursement rate for automobile expenses is insufficient to reimburse delivery drivers for the actual automobile expenses incurred in delivering NPC's pizza and other food items.  Further, NPC wholly fails to reimburse delivery drivers for their other job-related expenses incurred for the purpose of delivering NPC's pizza and other food items.  *Id.* at ¶ 20.

By incurring the automobile and other job-related expenses, Plaintiff and other NPC delivery drivers were deprived of the minimum wage guaranteed by the FLSA. *Id.* at ¶ 21. The net effect of NPC's policy and practice, instituted and approved by company managers, is that NPC willfully fails to pay minimum wage in order to save payroll costs. NPC thereby enjoys ill-gained profits at the expense of its employees. *Id.* at ¶ 24.

## II. <u>ARGUMENT</u>

### A.   Standard Governing Review of a Motion for Judgment on the Pleadings

The same standard applies to a motion for judgment on the pleadings under Rule 12(c) as to a motion to dismiss under Rule 12(b)(6). *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). A Rule 23(c) motion must be denied unless it appears from the pleadings that Plaintiff can prove no set of facts that would entitle Plaintiff to relief. *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256 (10th Cir. 2003). Such motions are "viewed with disfavor" and "rarely granted." *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992).

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 554-57 (2007), the Supreme Court held that a court may only dismiss a complaint for failure to state a claim if the factual allegations fail to "state a claim to relief that is plausible on its face." *Id*. at 554-57. The Supreme Court further held that, although a plaintiff must provide "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Smith v. U.S.*, 561 F.3d 1090, 1104 (10th Cir. 2009).

But while NPC's motion is based on Plaintiffs' alleged failure to satisfy a heightened pleading standard under *Twombly*, this Court recently held that *Twombly* "does not increase a plaintiff's burden in the context of pleading an FLSA claim." *McDonald v. Kellogg Co.*, 2009 U.S. Dist. Lexis 37365, *5 (D. Kan. Apr. 27, 2009) (Ex. 1).  "Indeed, federal courts in the wake of *Twombly* have held that extensive pleading is not required in the context of an FLSA claim and that allegations need only satisfy the requirements of Rule 8."  *Id.* at *4 (citing *Sec. of Labor v. Labbe*, 319 Fed. Appx. 761, 763-64 (11th Cir. 2008) (*Twombly* requires only that FLSA complaint allege a failure to pay overtime compensation to covered employees); *Xavier v. Belfor USA Group, Inc.*, 2009 U.S. Dist. Lexis 11751, *21-22 (E.D. La. Feb. 13, 2009) (Ex. 2) (plaintiffs stated a claim under FLSA by alleging they routinely worked more than 40 hours per week, were not paid overtime compensation and were covered employees); *Puleo v. SMG Property Mngt., Inc.*, 2008 U.S. Dist. Lexis 66582, *5-6 (M.D. Fla. 2008) (Ex. 3) (under *Twombly*, plaintiff alleged plausible FLSA claim by alleging he was a covered employee and employer unlawfully withheld overtime compensation); *Uribe v. Mainland Nursery, Inc.*, 2007 U.S. Dist. Lexis 90984, *7-8 (E.D. Cal. Dec. 11, 2007) (Ex. 4) (FLSA claim satisfied *Twombly* where plaintiffs alleged defendant failed to pay at correct rate for hours worked over 40 per week and plaintiffs were non-exempt employees)).  This Court also predicted the Tenth Circuit will likewise conclude that *Twombly* has not increased the pleading standard in FLSA claims.  *McDonald*, 2009 U.S. Dist. Lexis 37365, at *6-8 (citing *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342 (4th Cir. 2005)).

In deciding a motion to dismiss, the court must "accept as true all well-pleaded factual allegations in a complaint and view [them] in the light most favorable to the plaintiff." *Id.* at 1098. "[T]echnical fact pleading is not required" and a complaint need only provide "enough factual allegations for a court to infer potential victory." *Id.* at 1104. This Court has recently explained that "[a] plaintiff is not required to state precisely each element of the claim," *Paradigm Alliance, Inc. v. Celeritas Techs., Inc.*, 248 F.R.D. 598, 602 (D. Kan. 2008), and must only "set forth factual allegations, either direct or *inferential*, respecting each material element necessary to sustain recovery under some actionable legal theory. *Resource Ctr. for Indep. Living, Inc. v. Ability Res., Inc.*, 534 F.Supp.2d 1204, 1212 (D. Kan. 2008).

NPC "alternatively" requests partial summary judgment in its favor because it attached a letter from Plaintiffs' counsel in a separate case responding to a letter from opposing counsel in that other case. First, NPC admits that the letter is not attached to prove any fact and is certainly not "evidence." Second, the letter does not, as NPC contends, narrow or construe Plaintiffs' claims in this case, or commit Plaintiffs to a specific claim or measure of damages to the exclusion of all others. Plaintiff thus will treat NPC's motion as brought only under Rule 12(c) and not under Rule 56.

Finally, NPC's motion must be denied because it is dispositive of nothing. Even assuming NPC may "reasonably estimate" automobile expenses, this Court would still need to determine whether NPC's reimbursement formula is in fact reasonable and whether it results in payment of the minimum wage. These are questions of fact that are not properly addressed on a motion for judgment on the pleadings.

**B.      NPC's Reimbursement Rates Must Ensure Payment of Minimum Wage**

Under the Fair Labor Standards Act (FLSA), an employer is required to pay each employee wages at or above the minimum wage rate each workweek.  29 U.S.C. § 206; *see also Garcia v. Frog Island Seafood, Inc.*, 2009 U.S. Dist. Lexis 54718, at *13 (E.D.N.C.  June  29,  2009)  (Ex.  5).    Such  wages  must  be  paid  "finally  and unconditionally" and "free and clear."  29 C.F.R. § 531.35; *Marshall v. Quik-Trip Corp.*, 672 F.2d 801, 807 (10th Cir. 1982).  A deduction or unreimbursed job-expense that "cuts into" the minimum wage violates the FLSA.  *Marshall*, 672 F.2d at 807; 29 C.F.R. § 531.36(b).   There is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear.  *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1223, 1236-37 (11th Cir. 2002) (shifting costs that primarily benefit the employer to the employee constitute "de facto deductions"); *Garcia,* 2009 U.S. Dist. Lexis 54718, at *17 (same).

"The Supreme Court has held that FLSA 'exemptions are to be narrowly construed against  the  employers  seeking  to  assert  them  and  their  application  limited  to  those establishments plainly and unmistakably within their terms and spirit.'"  *Fowler v. Incor*, 279 Fed. Appx. 590, 593 (10th Cir. 2008) (quoting *Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960)).  "'[T]he general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof.'"  *Id.* at 592 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)).  "In light of these principles, [the Tenth Circuit has] held that an employer must prove an exemption by "clear and affirmative evidence."  *Id.*

**C.     NPC Should Reimburse at the IRS Standard Mileage Reimbursement Rate**

The DOL publishes its Field Operations Handbook ("the DOL Handbook") to provide "interpretations of statutory provisions" and "general administrative guidance." (Ex. 6-A, DOL website).  It was "developed by the [DOL's Wage and Hour Division] under the general authority to administer laws that the agency is charged with enforcing." *Id.*  The Handbook "reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator." *Id.*

Section 30c15 of the DOL Handbook, entitled "Car expenses – employee's use personal car on employer's business," expressly addresses pizza delivery drivers:

> In some cases it is necessary to determine the costs involved when employees use their cars on the employer's business in order to determine MW [minimum wage] compliance.   For example, **car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants**.

> (a) As an enforcement policy, the Internal Revenue Service (IRS) standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated  recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.  The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis."

> (b) The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes whether or not the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

(Ex. 6-B, DOL Handbook, § 30c15 (underlining in original, bold added)).

An agency's handbook is entitled to deference to the extent it interprets the provisions of the law administered by the agency and is persuasive. *Newton* v. *Aviation Admin.*, 457 F.3d 1133, 1137 (10th Cir. 2006) (citing *McGraw v. Barnhart*, 450 F.3d 493, 500 (10th Cir. 2006)). An agency's handbook "is entitled to great deference insofar as it is interpreting the agency's own regulations." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Archuleta v. Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184-85 (10th Cir. 2005)); s*ee also Bailey v. Youth Villages, Inc.*, 2009 U.S. Dist. Lexis 35532, at *17-18 & n.7 (W.D. Tenn. Apr. 20, 2009) (Ex. 7) (following 10th Circuit holdings in providing weight and deference to DOL Handbook); *William J. Lang Clearing, Inc. v. U.S. Dept. of Labor*, 520 F.Supp.2d 870, 879-880 (E.D. Mich. 2007) (giving DOL Handbook deference in interpreting 29 C.F.R. § 778.217). Moreover, to the extent NPC asserts there are any ambiguity, conflict or inconsistency between the applicable regulations, the DOL's interpretation is entitled to even greater deference. *Newton*, 457 F.3d at 1137; *Via Christi Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1272 (10th Cir. 2007).

Section 30c15 of the DOL Handbook is well-reasoned, persuasive and pertains directly to the issue here. Section 30 of the DOL Handbook interprets Part 531 of the DOL's own regulations and provides direction as to how to comply those regulations, including 29 C.F.R. § 531.35 itself. Section 30c15 expressly identifies the issue addressed as "determin[ing] the costs when employees use their car on their employer's business in order to determine MW [minimum wage] compliance." *Id*. Notably, it specifically acknowledges that "car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants." *Id*.

NPC asks this Court to disregard the DOL's direction to employers to use either the IRS standard business mileage rate or "actual costs and associate recordkeeping" as simply an expression of the DOL's "enforcement policy."  The DOL's enforcement policy is based on its interpretation of the law, but further, the DOL also suggests use of the IRS reimbursement rate "found in IRS Publication 917" "for FLSA purposes" instead of paying actual vehicle costs.  (Ex. 6-B, §§ 30c15(a) & (b)).  Publication 917, which has since been consumed into IRS Publication 17, describes use of both the IRS standard business mileage rate and the fixed or variable rate (FAVR) preferred by NPC.  (Ex. 6-C, p.16).  Yet, the DOL specifically chose the IRS reimbursement rate as the amount that provides sufficient reimbursement to ensure the minimum wage.  29 C.F.R. § 30c15.

Moreover, contrary to NPC's argument, § 30c15 expressly acknowledges that payment of actual automobile expenses by pizza delivery companies is possible and, as an alternative, permits payment of the IRS standard business mileage rate.  Notably, § 30c15 does not permit employers to unilaterally substitute their own lower reimbursement rates or use a lower rate determined under the FAVR method.

Section 30c15(b) of the DOL Handbook is entitled to "great deference."  *Newton,* 457 F.3d at 1137.  This Section is directly applicable, well-reasoned and persuasive. NPC postulates, without any supporting authority whatsoever, that the DOL "recognizes" that the IRS rate is "considerably generous."  What is clear, however, is that NPC seeks to justify a cheaper alternative and inexplicably seeks judgment on claims where it admittedly operates contrary to the DOL's established direction and enforcement policy.

**D.     NPC's "Estimation" of Expenses Is Neither Reasonable Nor Lawful**

Despite requesting judgment in its favor, NPC does not claim to comply with the FLSA's requirement that each employee receive minimum wage each workweek unconditionally and "free and clear."  Nor can it.  It also does not claim, much less affirmatively prove, that it falls within any of the exemptions to the FLSA.  Rather, NPC asks this Court to believe that its reimbursement rates are close enough so as to avoid scrutiny of whether its reimbursement policy complies with the FLSA's minimum wage requirements.

**1.     NPC's Reliance on 29 C.F.R. § 778.217 Is Misplaced**

**a.     29 C.F.R. § 778.217(b)(3) Does Not Apply Here**

NPC relies on 29 C.F.R. § 778.217(b)(3) to justify its approximation of delivery drivers' expenses.  That regulation, however, relates only to determining whether an expense reimbursement reasonably approximates an employee's actual expenses to determine whether the reimbursement should be treated as income and thus count toward the calculation of the employee's overtime wage rate:

> Payment by way of reimbursement for the following types of expenses will not be regarded as part of the employee's regular rate:
> *****
> (3) The actual or reasonably approximate amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.

29 C.F.R. § 778.217(b)(3).  This regulation does not authorize approximating expense reimbursements for purposes of ensuring payment of the minimum wage.

Even if this regulation could be extended to the calculation of minimum wage, it still would not apply to pizza delivery drivers.  This regulation by its own terms pertains only to approximation of expenses incurred while an employee is traveling "over the road."  *Acton vs. City of Columbia, Mo.*, 2004 U.S. Dist. Lexis 19004, at *18-19 (W.D. Mo. Sept. 10, 2004) (Ex. 8), aff'd 436 F.3d 969 (8th Cir. 2006).  The phrase "traveling 'over the road,'" means travel "away from home" or overnight travel.  *Id.*  NPC's drivers deliver pizzas and other food items locally, usually relatively close to their own homes.  There is no requirement they travel out of town or remain at their workplace overnight.

*Acton*'s holding is also consistent with definitions of "over the road" recognized in other areas of law.  *See, e.g., Transport Labor Contract/Leasing, Inc. & Subsidiaries v. Commr. of Internal Revenue*, 123 T.C. 154, 156 n.7 (2004) ("over-the-road" means the length of travel requires a truck driver to stay away from home overnight), rev'd on other grounds, 461 F.3d 1030 (8th Cir. 2006); *Int. Broth. Of Teamsters v. U.S.*, 431 U.S. 324, 356 n.42 (1977) (recognizing that NLRB has "long held" that groups of local drivers and over-the-road drivers are "functionally distinct groups with separate interests"); *Transerv Systems, Inc.,* 311 N.L.R.B. 766 (1993) (comparing over-the-road drivers to local drivers who are not away from employer's facility overnight).

Finally, § 778.217(b)(3) is an exemption to subsection (b)(1) defining all means of transportation as "tools of the trade," which are expenses that cannot be approximated.  *Lewis v. ASAP Land Express, Inc.*, 554 F.Supp.2d 1217, 1224 (D. Kan. 2008).  As an exemption, it is construed narrowly and must be proven by the employer.  *Freundt vs. Allied Tube & Conduit Corp.*, 2007 U.S. Dist. Lexis 87852, *11 (N.D. Ill. 2007) (Ex. 9).

### b.    29 C.F.R. § 778.217 Does Not Permit Employers to Reasonably Approximate the Minimum Wage

Even if 29 C.F.R. § 778.217 could be applied in this case, it does not permit an employer to reasonably approximate the minimum wage.  This regulation only permits an employer to exclude certain expense reimbursements from the employee's "regular rate" for purposes of calculating that employee's overtime rate of pay if the reimbursement reasonably approximates the actual expenses.[1]  This in no way permits an employer to "reasonably approximate" the minimum wage, nor is there any other support for such a proposition.   NPC's argument depends on improperly substituting this inapplicable regulation for the actual controlling regulation, 29 C.F.R. § 531.35.

Contrary to NPC's arguments, an employer may not satisfy the FLSA's minimum wage requirement by estimating expenses on a group basis.  *Recinos-Recinos vs. Express Forestry, Inc.*, 2008 U.S. Dist. Lexis 75137, at *3-4 (E.D. La. Sept. 10, 2008) (Ex. 10). Instead, an employer must reimburse each employee for the actual costs of travel to the extent such costs drive wages below minimum.  *Id*.  "The reimbursement must take into account the actual cost to the employee and <u>cannot be generalized, flat amounts</u> for all employees coming from a particular country."  *Id*. at *4 (emphasis added).

"Keeping in mind the rule that exceptions to FLSA requirements must be *narrowly construed* against the employer asserting them, an inspection of the plain text of the FLSA reveals that the FLSA permits employers to approximate per diem payments in terms of individual employees only."  *Picton v. Excel Group, Inc.,* 192 F.Supp.2d 706, 711-12 (E.D. Tex. 2002).  When an employer approximates reimbursement on a group

---

[1] *See* 29 U.S.C. 207(a)(1) (employers subject to FLSA must pay for overtime work at a "rate not less than one and one-half times the *regular rate* at which [an employee] is employed") (Emphasis added).

basis, it does so "at risk of violating the FLSA." *Id.* at 7.  Thus, when an employer fails to fully reimburse any employee such that unreimbursed costs "cuts into" minimum wage and the employee does not receive full minimum wage "free and clear," the employer violates the FLSA.  29 C.F.R. § 531.35.

NPC indirectly argues that 29 C.F.R. § 778.217 excuses compliance with § 531.35.  But § 778.217 is notably silent regarding how expense reimbursements are to be treated for purposes of determining whether the employer has paid employees the minimum wage.  If the Department of Labor wanted to allow employers to "reasonably approximate" an employees' actual expenses, while still satisfying minimum wage obligations, it could have said so by using the same language it used in 29 C.F.R. § 778.217(b)(3) in 29 C.F.R. § 531.35.  It did not.

This same argument has been rejected before.  In *Luiken vs. Domino's Pizza, LLC*, the plaintiffs alleged failure to pay minimum wage through providing insufficient expense reimbursements to pizza drivers.  2009 U.S. Dist. Lexis 66973, at *2-3 (D. Minn. Aug. 3, 2009) (Ex. 11).  Dominos moved to dismiss on the basis that, under § 778.217, an employer may reimburse based on a "reasonably approximate amount expended" by Plaintiffs in delivering pizzas.  *Id.* at *9.  The *Luiken* court rejected this argument.  *Id*.

NPC purports to "reasonably approximate" its delivery drivers' expenses by deriving a "per delivery" reimbursement rate by approximating both the mileage and expenses incurred by its drivers as a group.  This is improper.  But even if it were permissible, whether NPC's approximation is "reasonable" is a disputed question of fact that cannot be resolved on this record.

**2.      The Tax Publication Relied on by NPC Does Not Authorize Non-Compliance with the FLSA**

NPC's next argument that its supposed compliance with a tax publication constitutes compliance with the FLSA has also been consistently rejected.  "[W]hen employment statutes overlap, we are to apply the higher requirement unless the regulations are mutually exclusive." *Arriaga*, 305 F.3d at 1235.  In *Arriaga*, the plaintiffs claimed their wages were reduced below minimum for the workweek because the employers did not timely reimburse them for travel expenses.  The employers argued their conduct was lawful because the Immigration and Nationality Act ("INA") permitted them to wait until an employee completes half of his or her contract period before reimbursing travel expenses.  *Id*. at 1235-36.  The Court rejected that argument and found that the employers must comply with the FLSA regardless of what the INA permits.  *Id.; see also Rivera v. The Brickman Group, Ltd.*, 2008 U.S. Dist. Lexis 1167, *9-10 (E.D. Pa. Jan. 7, 2008) (Ex. 12) (same); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1310 (N.D. Ga. 2008) (same); *De Luna-Guerrero v. The N.C. Grower's Assoc., Inc.*, 338 F.Supp.2d 649, 663-64 (E.D.N.C. 2004) (same).

The same rules apply here.  Just because a tax publication may permit NPC to reasonably approximate expense reimbursements on a group basis does not mean that NPC is exempted or excused from complying with the FLSA's requirement that each employee receive minimum wage each workweek.  While NPC may be well within its rights to use the FAVR method to reimburse its drivers if its wages were sufficiently above minimum to avoid invoking the FLSA, that is not the case here.

Further, NPC's reliance on IRS Publication 17 to support its supposed use of the FAVR method has additional problems as well.  The authority for IRS Publication 17 is Rev. Proc. 2008-72, which prescribes multiple requirements for use of FAVR including, but not limited to, mileage substantiation and other information reporting by employees (Rev. Proc. 2008-72 §§ 8.05(1) & 8.06), limits on the price of new vehicles compared to a "standard" vehicle (§ 8.05(5)), employee's tax reporting practices (§ 8.05(6)), vehicle insurance costs (§ 8.05(8)), employer maintenance of records and statistics (§ 8.07(1)), and periodic information reporting to employees (§ 8.07(2)).  (Ex. 6-D, p.5).  NPC has not shown that it complies with any of these requirements.  Rather, it has unilaterally declared its eligibility to use FAVR.  Nevertheless, even if NPC can substitute FAVR for sufficient reimbursements to achieve minimum wage, these are still disputed fact issues that cannot be resolved on a motion for judgment on the pleadings.

### 3.     NPC's Complaints Regarding Difficulty of Compliance and Inequity Should be Afforded No Weight

NPC complains that tracking actual expenses would be difficult.  Whether true or not, such arguments are not relevant in determining compliance with the FLSA.  *See, e.g., Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 33 n.4 (1987) (FLSA "makes no exception for employers who are financially or otherwise unable to comply."); *Picton*, 192 F.Supp.2d at 713 n.1 (refused to consider employer's "practical concerns" about difficulty of verifying expenses of each employee); *De Luna-Guerrero*, 338 F.Supp.2d at 664 (court is "not authorized to decide what should be the law"); *Arriaga*, 305 F.3d at 1236; *Dole v. Petroleum Theaters, Inc.,* 876 F.2d 518, 523-24 (5th Cir. 1989) (rejecting employer's argument that paying overtime is too "impractical" and expensive).

Nevertheless, if NPC believes that tracking actual automobile expenses is too difficult, the DOL permits it to pay the IRS standard mileage reimbursement rate.

**E.      NPC'S Motion is Dispositive of Nothing**

Even assuming *arguendo* NPC can approximate the delivery drivers' automobile expenses, there is no factual record at this early pleading stage on which this Court can determine whether the reimbursements are "reasonably approximate."  Plaintiff has pled under-reimbursement for automobile expenses and no reimbursement for other job-related expenses whatsoever.  Compl., ¶ 22.  The question of adequacy of automobile expense reimbursements is a complex fact determination to be rendered after full opportunity for discovery.

**F.      Plaintiffs Have Sufficiently Pled Their Claims**

Plaintiffs have adequately pled their claims under the applicable standard.  In *McDonald*, this Court held that simple allegations that the defendant has violated the FLSA through its policy and practice of refusing to pay employees, including plaintiffs, the appropriate rate for hours worked in excess of forty hours per week met the requirements of Fe. R. Civ. P. 8(a).  2009 U.S. Dist. Lexis 37365, at * 4-8.  Plaintiffs have done this and more.  As this Court further recognized in *McDonald*, the defendant there "demand[ed] a level of specificity from plaintiffs' complaint that is not required by the Federal Rules of Civil Procedure."  *Id*. at *4.  The same is true from NPC here.  And, Plaintiffs' Complaint here is substantially more detailed than the complaint found sufficient in *McDonald*.

NPC relies heavily on a slip opinion from the District of Minnesota, *Bailey, et al. v. Border, et al.*, Case No. 09-cv-01230-RHK-AJB (D. Minn. Slip. Op. Oct. 6, 2009) (NPC's Ex. D). While *Bailey's* application of the pleading standards is questionable at best, the bare-bones pleading in that case is easily distinguished from the detailed Complaint here. *See Simms, et al. v. Tumbleweed Pizza Partners, L.P.*, Case No. 2:09-CV-168-J (N.D. Tex. Slip. Op. Oct. 27, 2009) (Ex. 11) (denying motion to dismiss a complaint extremely similar to the Complaint in this case); *see also* briefing on motion to dismiss in *Simms* (Exs. 13-14).

In *Bailey*, plaintiffs merely pled the simple conclusion, "Defendants failure to adequately reimburse Plaintiffs, the Nationwide Collective, and the Minnesota Rule 23 Class for expenses incurred on Defendants' behalf has resulted in Plaintiffs, the Nationwide FLSA Collective, and the Minnesota Rule 23 Class being paid less than federal minimum wage, and less than Minnesota minimum wage." (NPC's Ex. D, p.2, ¶2). Unlike Plaintiff here, the *Bailey* plaintiffs pled no facts to support that conclusion.

Here, the factual allegations of the Complaint are far more detailed and easily rise to the level of showing a plausible right to relief. Specifically, Plaintiff pled the following:

- "NPC requires its delivery drivers to maintain and pay for operable, safe and legally-compliant automobiles to use in delivering NPC's pizza and other food items." First Am. Compl., ¶ 15.

- "In addition, NPC requires the delivery drivers to incur other job-related expenses in delivering NPC's pizza and other food items." *Id.*, ¶ 16.

- "Pursuant to such requirements, delivery drivers purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, and automobile insurance, and suffer automobile depreciation ("automobile expenses"), all for the primary benefit of NPC.  Additionally, they purchase other items including, but not limited to, a cellular telephone and cellular telephone services, uniform and special apparel items including pants and shoes, dry cleaning and laundering services, and maps, flashlights and batteries ("job-related expenses), again all for the primary benefit of NPC."  *Id*., ¶ 17.

- "NPC paid Plaintiffs and other delivery drivers an hourly wage of approximately the applicable federal or state minimum wage plus a set amount for each delivery as a partial reimbursement for automobile expenses."  *Id*, ¶ 18.

- "NPC has not relied on any tip credit to satisfy federal or state minimum wage requirements."  *Id*., ¶ 19.

- "The amount paid by NPC per delivery for automobile expenses was and is insufficient to reimburse delivery drivers for the automobile expenses incurred in delivering NPC's pizza and other food items.  Further, NPC wholly failed and fails to reimburse delivery drivers for their other job-related expenses incurred for the purpose of delivering NPC's pizza and other food items."  *Id*., ¶ 20.

- "By incurring automobile and other job-related expenses, Plaintiffs and other NPC delivery drivers were deprived of federal and state minimum wages.  *Id*., ¶ 21.

- "NPC's failure to pay the cost of purchases, maintenance and cleaning of uniforms and special apparel items worn by Plaintiffs and other similarly situated

employees employed in Colorado violates the CMWWA and 7 CCR § 1103-1." *Id*., ¶ 22.

- "On information and belief, NPC is adhering to the same policy and practice with respect to all delivery drivers at all of its other Pizza Hut restaurants nationwide." *Id*., ¶ 23.

- "The net effect of NPC's policy and practice, instituted and approved by company managers, is that it willfully fails to pay federal and state minimum wages and fails to pay or reimburse for uniform and special apparel purchases, maintenance and cleaning in violation of Colorado law in order to save payroll costs.  NPC thereby enjoys ill-gained profits at the expense of its employees."  *Id*., ¶ 24.

The Second Amended Complaint dismissed in *Bailey* contains none of these factual allegations and thus provides no support for NPC's argument here.

Here, Plaintiff pled the applicable rate of pay as "an hourly wage at or around the federal and/or Colorado minimum wage plus a set amount for each delivery as a partial reimbursement for their automobile expenses."  *Id*., ¶ 18.  The applicable minimum wages over the relevant period are pled in detail.  *Id*., ¶¶ 42, 57.  Plaintiff also pled the amount of unpaid minimum wages due as the value of the unreimbursed gasoline, vehicle parts and fluids, automobile repair and maintenance, automobile insurance, and vehicle depreciation plus the value of the completely unreimbursed cell phone services, uniform and special apparel items, laundering services, maps, flashlights and batteries incurred by himself and the putative class members.  *Id*, ¶ 17.  This easily satisfies the standard recognized by this Court in *McDonald*.

In *Simms*, the defendant pizza company also argued that the complaint should be dismissed based on *Bailey*. (Ex. 13). However, as here, the *Simms* plaintiffs showed that their complaint contained the same or extremely similar allegations as listed above, and therefore the federal pleading standard was satisfied. (Exs. 13-15). On October 27, 2009, the Northern District of Texas accordingly denied the defendants' motion to dismiss. (Ex. 15). The Complaint here is extremely similar to the complaint filed in *Simms* and is easily distinguished from *Bailey*'s second amended complaint. *Id*. As in *Simms*, Defendant's motion to dismiss should be denied.

Ironically, despite NPC's heavy reliance on *Bailey*, it neglects to even mention *Luiken*, from the same court but denying Domino's motion to dismiss. (Ex. 11).

NPC complains Plaintiff has not pled sufficient facts to show that his wages fell below minimum. However, the mathematical calculation is very simple and readily apparent from the Complaint. When employees, like Plaintiff, are compensated at or near minimum wage, all unreimbursed business expenses cut into minimum wage. This math is not speculative. *See, e.g., Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. Lexis 7770, *22 (S.D.N.Y. Feb. 1, 2007) (Ex. 16) (unreimbursed job expenses "necessarily" decreased minimum wage employees' net pay below minimum wage); *see also Zhong vs. August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007) (pleading simple arithmetic formula suffices to provide defendant notice from which to calculate damages).

Moreover, the number of miles driven by delivery drivers, along with other payroll information necessary to calculate Plaintiffs' damages, is in NPC's possession. In fact, 29 C.F.R. § 516.2 requires that "[e]very employer shall maintain and preserve payroll or

other records containing … [t]otal additions to or deductions from wages paid each pay period" and "in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions." *Id*.  As established earlier, employee-paid job expenses constitute de facto deductions from wages.  *Arriaga*, 305 F.3d at 1236-37; *Garcia,* 2009 U.S. Dist. Lexis 54718, at *17.  Regardless, pleading specific dollar amounts paid by each class member for each particular unreimbursed business expense exceeds the federal pleading requirements.

Further, even if the Plaintiffs had no information about their unpaid wages, when an employer fails to comply with the FLSA's recordkeeping requirements, the employees are entitled to provide proof of their unpaid wages by "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Martin v. Tony & Susan Alamo Foundation*, 952 F.2d 1050, 1052 (8th Cir. 1992) (same).  "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act." *Id*.  "The solution … is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Anderson*, 328 U.S. at 687.  "Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.; see also Baker v. Barnhard Constr. Co.,* 146 F.3d 1214, 1220 (10th Cir. 1998) ("The

employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law.").

## IV.   CONCLUSION

NPC's motion for judgment on the pleadings should be denied in full for all reasons stated.

Dated:          November 9, 2009                Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**
            /s Richard M. Paul III
George A. Hanson (MO Bar #43450)
Richard M. Paul III (MO Bar #44233)
Jack D. McInnes (MO Bar #56904)
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:   (816) 714-7100
Facsimile:   (816) 714-7101

**WEINHAUS & POTASHNICK**
Mark A. Potashnick (MO Bar # 41315)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:   (314) 997-9150
Facsimile:   (314) 997-9170

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on attorneys of record for Defendant NPC International, Inc., Lori R. Schultz and Mark C. Tatum, Shook, Hardy & Bacon, L.L.P., 2555 Grand Blvd., Kansas City, Missouri, 64108-2613 via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

            /s Richard M. Paul III
Attorney for Plaintiffs