## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

JEFFREY WASS and MARK SMITH,    )
individually and on behalf of a class of    )
others similarly situated,    )
    )    Case No. 09-CV-2254 JWL/KGS
    Plaintiffs,    )
    )
    vs.    )
    )
NPC INTERNATIONAL, INC.,    )
    )
    Defendant.    )

### PLAINTIFFS' REPLY IN SUPPORT OF
### MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION

NPC's opposition to Plaintiffs' motion for conditional collective action certification incredibly asserts that Plaintiffs have not even *alleged* a violation of the Fair Labor Standards Act ("FLSA"), essentially continuing the arguments from its two motions for judgment on the pleadings.   What NPC means to say, though, is that Plaintiffs have not yet submitted evidence in support of their case, effectively asking this Court to ignore the well-established certification process under the FLSA.   In its place, NPC would have this Court adopt a more stringent test than that required for certification under Rule 23.   But the standard for first-stage certification in a collective action "is considerably less stringent than Rule 23(b)(3) class action standards." *Gieseke vs. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1166 (D. Kan. 2006).   For that reason, the process for approving notice to similarly situated employees occurs early in a case and is based on "substantial allegations" and not on discovery, deposition testimony, or other evidence.

Rather than depart from established Tenth Circuit precedent, the Court should reject NPC's attempt to engage in a premature battle on the merits. Plaintiffs have met the substantial allegations test by alleging, and supporting with declarations and policies, that NPC's reimbursement policy is facially unlawful and reduces drivers' net wages below minimum wage. Plaintiffs have thus met the standard for court-authorized notice.

## Reply Argument

## I.     The Standard for Conditional Certification Is Lenient For a Reason

The Tenth Circuit's "lenient" standard for issuing conditional certification and notice under 29 U.S.C. § 216(b) requires "nothing more than substantial allegations" that the putative class members are "similarly situated." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). This lenient standard results from a public policy in favor of collective actions. "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Because proceeding collectively is a "right" that has been granted to employees by Congress, this Court should not foreclose that right unless "the action relates to specific issues and circumstances personal to the plaintiff rather than any generally applicable policy or practice …." *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987).

NPC asks the Court to abrogate this lenient standard and eliminate Plaintiffs' statutory right to proceed collectively by arguing that the FLSA's collective action mechanism is unfair and that the barriers should be higher for employees to proceed collectively against their employer.

NPC's argument is contrary to the law and the facts.  The FLSA's collective action process by no means tilts the playing field unduly in favor of employees.  Despite providing employees with a cause of action and meaningful remedies, the process is inferior to the Rule 23 class action device in many significant ways.  The mere filing of a putative class action under Rule 23 tolls the statute of limitations for all class members; not so for employees asserting claims under the FLSA.  Their statute of limitations continues to run until they affirmatively opt-in to the case.  29 U.S.C. § 216(c).  Further, once the Court's certification order issues under Rule 23, class members do not need to take any action to share in the success of the named plaintiffs.  Under the FLSA, however, employees must be informed of the lawsuit and affirmatively join the case.  Moreover, the FLSA has a short two- or three-year statute of limitations.  Thus, by the time a case is resolved, any former employees who did not learn of the case and affirmatively join are likely time-barred from pursuing a similar claim.  And, both present and former employees are denied recovery each day that notice and the right to opt-in are delayed.  These limitations unfortunately permit the defendant to keep much of its gains from failing to pay all wages required by the FLSA.

Because of these significant draw-backs, the FLSA's two-step certification process permits "first-stage" certification for the purpose of providing notice of the case to similarly situated employees and allowing them to assert their similar claims; and further allows plaintiffs the benefit of full discovery before facing the more rigorous "second-stage" certification process.  This off-setting benefit is well-justified and by no means unfairly prejudices the rights of employers.

## II.    NPC's Delivery Drivers Are Similarly Situated

NPC has not shown that Plaintiffs' allegations arise from "specific issues and circumstances personal to the plaintiff." *Burt*, 116 F.R.D. at 277.  "Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying [as required by the FLSA] is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan." *Renfro v. Spartan Computer Serv., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007).  It is undisputed that all of NPC's delivery drivers have the same job title, same job duties, and all incur automobile and other job-related expenses.  Further, all delivery drivers are subject to the same reimbursement policy, which by its very terms "applies to all employees of NPC who deliver pizza and other approved menu items to customers." (Ex. 21-C).  As Plaintiffs allege, "By incurring automobile and other job-related expenses, Plaintiffs and other NPC delivery drivers were deprived of federal and state minimum wages." (Amended Compl. (Doc. No. 14), ¶21).

Ultimately, NPC grudgingly acknowledges the lenient standard that applies here, but argues that Plaintiffs must meet more than the bare minimum pleading requirements. Plaintiffs agree.  The standard is not "allegations," it is "substantial allegations." *Thiessen,* 267 F.3d at 1102.  But on the other hand, "Plaintiffs need not show that members of the conditionally certified class are actually similarly situated." *See, e.g., Huang v. Gateway Hotel Hldgs.*, 248 F.R.D. 225, 227 (E.D. Mo. 2008).  "The determination of whether members are actually 'similarly situated' is to be made during the second step of the process, after the close of discovery." *Id.* at 227 n.1.

Despite the lack of any meaningful discovery, the record supporting Plaintiffs' allegations is more than just substantial. Currently, thirty-one (31) delivery drivers have opted in to this case since it was commenced. (Doc. Nos. 1, 12-13, 17-22, 25-28, 30, 32-33, 35, 37-39, 41, 50, 56, 59, 83). Twenty (20) of these opt-in Plaintiffs, from different locations in multiple states, submitted declarations confirming the allegations of the Complaint. (Ex. 1-20 ("Plaintiff Declarations"), ¶¶ 1, 6-7). Plaintiffs supported their allegations with evidence from NPC restaurants geographically dispersed across the country, and NPC's own written company-wide policies corroborate their allegation that this unlawful practice is a corporate policy that applies equally to all drivers. It also dispels NPC's argument that Plaintiffs' allegations apply only to certain reimbursement amounts or geographic regions or reimbursement plans. Under established precedent, there can be no dispute that Plaintiffs' allegations and declarations more than satisfy the lenient "substantial allegations" standard.

NPC seeks to avoid this clear weight of authority by relying heavily on out-of-circuit cases where certification was denied because the Court applied a different standard, or where the Plaintiffs' declarations were wrong or unsupported. For example, NPC cites *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008). But there, certification was denied because plaintiffs' case theory was admittedly wrong. *Id.* at *5. Likewise, NPC cites *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889 (D. Md. 1995), but there the Court rejected the standard applied in the Tenth Circuit and required a "preliminary factual showing." *Id.* at 893-94. These cases provide no support for NPC's argument the Court should reach the atypical result of denying certification.

### III.    NPC's Arguments on the Merits Are Premature

Despite NPC's 42-page effort to delve into the merits of the case, none of these issues are properly before the Court at this first stage of the certification process.  In fact, "inviting the Court to consider additional evidence beyond the allegations of the complaint and supporting declarations" is contrary to the standard adopted by the Tenth Circuit.  *Renfro,* 243 F.R.D. at 434; *see also Gieseke*, 408 F.Supp.2d at 1168 (refusing to delve into merits at conditional certification stage). It is only at the second stage that a court reviews "the disparate factual and employment settings of the individual plaintiffs" and "the various defenses available to defendant which appear to be individual to each plaintiff." *Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 485 (D. Kan. 2004). The Court's decision at this stage is based solely on the allegations and evidence provided by the Plaintiffs.  *Renfro*, 243. F.R.D. at 434; *Huang*, 248 F.R.D. at 227 ("Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs.").  NPC's merits arguments are premature.

For all the reasons stated earlier, the lenient certification process is based on Plaintiffs' allegations, not proof.   The detailed Complaint, policy documents and declarations Plaintiffs have provided in support of their allegations far exceeds the "substantial allegations" standard for first phase conditional certification.  NPC's attempt to rebut Plaintiffs' allegations by providing evidence about its reimbursement formula and declarations of witnesses who have not yet been deposed ignores the relevant standard and presents a one-sided story that has yet to face the crucible of discovery.

IV.     **NPC's Merits-Based Arguments Are Also Wildly Incorrect**

The Plaintiffs' declarations stating under oath that they were not fully reimbursed for their automotive and job-related expenses, plus the allegations in the Complaint that this under-reimbursement resulted in net wages below the FLSA's minimum wage provisions, meets the lenient standard.  Because the decision whether to send notice to NPC's delivery drivers is based on Plaintiffs' allegations and declarations, and not on evidence adduced during the early stages of discovery, the Court's analysis should stop at this point and not consider NPC's arguments about whether Plaintiffs can ultimately prove their claims.  Out of an abundance of caution, however, Plaintiffs will respond to NPC's unsupported merits-based arguments.

A.     **Plaintiffs' Minimum Wage Claims Are Readily Apparent**

Despite NPC's representations about the company it paid to devise its reimbursement policy, NPC's entire mileage reimbursement system is fundamentally flawed as a matter of law.  The law requires employers to reimburse their employees for business mileage at *either* their actual costs incurred *or* at the IRS business mileage reimbursement rate.  (Ex. 24, DOL Handbook, § 30c15).  NPC admits it does neither. Obviously, tracking actual expenses is burdensome, which is why most employers choose to pay the IRS rate.  But even if NPC could justify using a formulaic reimbursement method that is not based on either actual costs or the IRS rate, the law at the very least requires NPC to track its employees' actual miles driven, and apply a reimbursement formula accordingly.  NPC's use of a formula based on averages and estimates for all drivers in a particular region, regardless of miles driven, is unlawful on its face.

7

NPC places great emphasis on its charts showing examples of drivers who were paid slightly above minimum wage. But a similar example shows the minimum wage violation that is occurring here. Plaintiff Renfrow has testified that NPC reimbursed him at or around $.88 per delivery. (Ex. 27, Dep. of Richard Renfrow, p. 43, l.19 – p.44, l.12). If the average delivery length is at or around five miles, as Plaintiff Smith has testified (Ex. 26, Dep. of Mark Smith, p.56, l.25 – p.58, l.23), NPC's effective per mile reimbursement rate is roughly $.18 per mile. The IRS business mileage reimbursement rate ranged between $.445 and $.585 per mile during the applicable limitations period. Thus, every mile driven on the job would decrease net wages between $.265 ($.445 - $.18) and $.405 ($.585 - $.18). At these numbers, drivers are losing between $1.33 and $2.03 for every delivery that they make. This differential easily consumes any amounts over the state or federal minimum wage some of these drivers received as base pay.

Whatever the proper reimbursement rate, whether the IRS rate or otherwise, calculating damages on a class-wide basis will not require individual proof of each expense incurred by every class member contrary to NPC's unsupported argument. Plaintiffs will not prove damages by submitting millions of receipts or individualized estimates for purchases of gas or vehicle maintenance, but rather by showing through expert testimony what a proper reimbursement formula should be and applying that to the miles actually driven by the class members, and calculating how much the under-reimbursement causes each driver to fall below minimum wage. A class-wide trial will thus resolve whether NPC's inadequate expense reimbursement results in minimum wage violations and by how much.

As the example above shows, NPC's oft-repeated assertion that there are "no facts" to support Plaintiffs' allegation that they were paid less than minimum wage is plainly false.  In addition, NPC completely ignores the testimony of all seven Plaintiffs it deposed, who testified that NPC's delivery reimbursement is insufficient because it barely, if at all, covers their gas expense (as opposed to service, maintenance, parts, depreciation, etc.).  (Ex. 25, Dep. of Jeffrey Wass, p.136, l.13 – p.137, l.13, p.140, l.16 – p.141, l.11; Ex. 26, Dep. of Mark Smith, p.100, l.21 – p.111, l.6; Ex. 27, Dep. of Richard Renfrow, p.13, l.22 – p.15, l.2, p.31, l.10 – p.36, l.8, p.147, l.12 – p.148, l.15; Ex. 28, Dep. of Humberto Valderrama, p.75, l.2-22; Ex. 29, Dep. of Jack Abrahamian, p. 97, l.12 – p.98, l.18; Ex. 30, Dep. of Penni Tanner, p. 58, l.22 – p.59, l.; Ex. 31, Dep. of Patrick Coffman, p.42, l.1-5, p.59, l.14-24).   And, as NPC admits, it completely fails to reimburse for any other job-related expense.

NPC faults the Plaintiffs for not declaring under oath that they were paid less than minimum wage, but that conclusion would require them to know what reimbursement amount they are entitled to receive, and the number of miles they drove during the class period, and be able to calculate their effective net wage rate.  They simply do not know that information.  But they do know why they believe they are not paid minimum wage:

> Q.    So do you claim that you were not paid the minimum wage by NPC for any hours worked since January, 2009?
> A.    *Well, that's what we want to figure out.  I don't know the numbers here.  I suspect that may be the case.*
> Q.    And you suspect it may be the case because?
> A.    *Because when I go to get gas, I find that most of it goes – my compensation goes into buying gas.  There's not a whole lot left over.*

(Ex. 27, Dep. of Richard Renfrow, p. 34, l.8-18).

NPC next argues that its drivers cannot be similarly situated because its mileage reimbursements varied over time or as a result of different formulas. These differences, however, are also irrelevant at this stage. First, the evidence will show the total number of miles driven by each driver and the total reimbursement amounts received for those miles driven. The fact that damages will be calculated individually is typical in wage cases and is not a relevant factor at the conditional certification stage "unless the issue creates a conflict which goes to the heart of the lawsuit," which NPC has not shown. *Gieseke*, 408 F.Supp.2d at 1168; *Brown vs. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004). In fact, even under the more stringent Rule 23 standard, differing damages do not prevent certification. *See, e.g., Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 692 (D. Kan. 2009).

Second, NPC admits that it used the same corporate consultant, Runzeheimer, to set its reimbursement amounts, and that Runzheimer takes into account the same criteria to do so, including the same mid-size, six-year-old car on which its assumptions are based. (Doc. No. 79-7; Doc. No. 85-3, ¶¶ 17, 19). Based on "regional differences in the price of gas," (Ex. 21-C), Runzheimer has tailored NPC's formula for each region, but NPC does not even *claim* that these regions have a meaningfully different reimbursement policy. Nowhere does NPC suggest that these regional differences are designed to reimburse some drivers more than others compared to their actual expenses. Because it is the difference between actual expenses and reimbursements that matters in this case, and not the reimbursement amount itself, changes in the reimbursement amount should not meaningfully change the amount that its drivers are being under-reimbursed.

**B.     NPC Cannot Transfer Its Record-Keeping Duty to Plaintiffs**

NPC next argues that Plaintiffs are precluded from recovering because it was incumbent upon them to record all the mileage and expenses they incurred and report it to NPC.  Not only does NPC's position attempt to impute to delivery drivers requirements that were not asked of them, and knowledge of the law they do not have, it also misstates both the facts and suggests legal requirements that do not exist.

Under 29 C.F.R. § 516.2(10), "[e]very employer shall maintain and preserve payroll or other records containing … [t]otal additions to or deductions from wages paid each pay period" and "in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions."  *Id.*  Employee-paid job expenses constitute de facto deductions from wages.  *See Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236-37 (11th Cir. 2002); *Garcia v. Frog Island Seafood, Inc.*, 644 F.Supp.2d 696, 705 (E.D.N.C. 2009).  Thus, NPC possesses the total miles driven by drivers and their payroll information, from which Plaintiffs' damages can be calculated.

**C.     All Plaintiffs Have Unreimbursed Job-Related Expenses**

Lastly, NPC states that all Plaintiffs admit that the company does not require drivers to purchase clothing that constitutes a "uniform," maps, cell phones, flashlights and batteries.  These statements are not based on facts, but rather on legal arguments about what constitutes a uniform or whether expenses that drivers are not instructed to purchase but are practically necessary to perform the job properly must be paid for by the employer.  Whether the law requires NPC to reimburse for these job-related items is a legal issue that can be determined in a single proceeding for all delivery drivers.

11

Further, while true that not all delivery drivers incurred precisely the same job-related expenses, NPC does not dispute that it pays for NONE of those expenses—and argues it is not obligated to do so.   Accordingly, NPC's reliance on the fact that some drivers incurred certain job-related expenses, while other drivers incurred different job-related expenses, does not preclude them from being similarly situated because all drivers incurred some job-related expenses.   The unifying decision/policy is that NPC does not reimburse for any of these expenses.   Because any job-related expenses they wrongfully incurred without reimbursement from NPC only serve to further decrease their wages in addition to the decrease caused by the under-reimbursed automotive expenses, the fact that these drivers suffered unreimbursed job-related expenses makes them similarly situated for purposes of conditional certification.

## V.       The Proper Notice Period Should Be 3 Years

Lastly, NPC seeks to limit Plaintiffs' certification period to two years based on its contention that Plaintiffs have not supported their conclusion that NPC "willfully" violated the FLSA.   This assertion is both untrue and irrelevant.   A finding of willfulness is based on the Defendant's "failure to make adequate inquiry into whether conduct is in compliance with" the FLSA. *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1280 (11th Cir. 2008); 5 C.F.R. § 551.104.   Whether Plaintiffs can satisfy this standard will be a fact question for the jury to decide based on the evidence, but all delivery drivers are inherently similarly situated with respect to whether NPC failed to make an adequate inquiry.   Moreover, it would be grossly prejudicial to send out notice to employees in the last two years now, and re-send notice to employees in the third year after Plaintiffs

amass additional discovery because, by that time, the claims of persons employed only in the third year would be barred by the statute of limitations if they were not provided notice of this action until the willfulness question were decided.

Further, NPC is wrong that Plaintiffs have no facts to support their allegation that it willfully violated the FLSA.  This could not be further from the truth.  All seven opt-ins deposed by NPC testified that they and/or other drivers complained to management and NPC did nothing to correct the problem.  (Ex. 25, Dep. of Jeffrey Wass, p.150, l.10-17, p.157, l.19-25; Ex. 26, Dep. of Mark Smith, p.13, l.15 – p.14, l.5; p.17, l.22 – p.18, l.4, p.54, l.23 – p.55, l.13; Ex. 27, Dep. of Richard Renfrow, p.132, l.19-25; Ex. 28, Dep. of Humberto Valderrama, p.59, l.20 – p.61, l.6; Ex. 29, Dep. of Jack Abrahamian, p. 96, l.6 – p.97, l.11; Ex. 30, Dep. of Penni Tanner, p. 67, l.5-12, p.68, l.9 – p.70, l.6; Ex. 31, Dep. of Patrick Coffman, p.58, l.11 - p.59, l.4).

For this reason, all drivers in the last three years must receive notice of their right to opt-in to this case, and not just those drivers in the last two years.  *See, e.g., Lewis v. ASAP Land Express, Inc.*, 2008 WL 2152049, *2 (D. Kan. May 21) (approving notice to class members employed within three years); *Herrera v. Unified Mgmt. Corp.*, 2000 WL 1220973, *2 (N.D. Ill. Aug. 18) (notice should reference three years, and, if necessary, can later be restricted, because it is more efficient to later restrict the class then to later propose, revise through a series of briefs, and send out another notice); *see also, e.g., Kautsch v. Premier Communications*, 504 F.Supp.2d 685, 690 (W.D. Mo. 2007) (notice to be sent to employees working within three years and issue of willfulness goes to merits to be examined at later stage).

## VI.     Certifying This Case Will Serve Judicial Economy

Denying certification here would be grossly prejudicial to these low-wage earner Plaintiffs.  The only way for them to effectively exercise their rights under the FLSA's minimum wage provisions is to proceed collectively because the high cost of expert testimony to describe the flawed methodology behind NPC's reimbursement formula and to identify the true cost of owning and operating a vehicle for business use could not be undertaken by a single plaintiff.

As the Supreme Court recognized in *Hoffman-La Roche*, the goal of judicial economy weighs heavily in favor of certification and the issuance of notice to potential class members.  493 U.S. at 170.  Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact...." *Id*.  "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action."  *Id.*  This Court therefore should conditionally certify a class of "All current and former delivery drivers employed by NPC in the United States within the applicable statute of limitations.

## VII.    NPC Has Not Justified Changing Plaintiffs' Proposed Notice

Finally, in its separately-filed and erroneously-titled "Response to Plaintiffs' Motion for Extension of Time," NPC objects to Plaintiffs' proposed notice in several respects, each of which lacks merit.  First, as Plaintiffs explained in their opening brief, numerous courts have held that class counsel is entitled to control the content of the notice unless the defendant can show that alteration is necessary.  *McCaffrey v. Mortgage Sources, Corp.*, 2009 WL 2778085, at *5 (D. Kan. Aug. 27)*; Lewis,* 2008 WL 2152049,

*2); *Gipson v. Southwestern Bell Tele. Co.*, 2009 WL 1044941, at *4 (D. Kan. April 20); *Gieseke v. First Horizon Home Loan Corp.,* 2006 WL 2919076, *1 (D. Kan. Oct. 11). NPC has not shown that its edits are necessary, instead demanding language that is neither required nor proper, and thus its substantive changes to Plaintiffs' proposed notice should be summarily rejected.

Second, NPC's suggestion that Plaintiffs' proposed notice is inaccurate should be rejected. The notice does not suggest that this lawsuit is only about reimbursement of Plaintiffs' expenses. The very first bullet-point plainly explains that Plaintiffs are claiming that NPC's failure to fully reimburse delivery drivers for automobile expenses and other job-related expenses reduced their net wages below the federal minimum wage. Similar statements are contained throughout the notice. NPC then demands a laundry list of changes that have no support in either fact or law, and which should be rejected.

Third, NPC's proposal to warn potential class members about their so-called "obligations" to be deposed, submit written discovery, and appear or otherwise travel to Kansas City is designed to deter opt-ins and scare potential claimants from exercising their rights. For this reason, courts routinely reject efforts to include such deterrents. *See, e.g., Gieseke,* 2006 WL 2919076, at *2 (rejecting language about costs and expenses because (1) the FLSA is silent as to whether prevailing defendants may recover costs, and (2) the warning could discourage potential plaintiffs from participating), *citing Austin v. CUNA Mut. Ins. Soc'y,* 232 F.R.D. 601, 608 (W.D. Wis. 2006) (collecting cases); *Davis v. NovaStar*, 2005 WL 3662438 (W.D. Mo. Dec. 13) (rejecting defendants' proposed language that plaintiffs may be responsible for paying court costs if they do not prevail);

*Bell v. Mynt Entertainment, LLC,* 223 F.R.D. 680, 683 (S.D. Fla. 2004) (unnecessary for notice to contain language regarding any potential exposure to fees and costs); *Herrera,* 2000 WL 1220973, *3 (§ 216(b) is silent as to prevailing defendants; including such a statement would unreasonably chill participation by potential class members).

Fourth, NPC's suggestion that Plaintiffs' proposed notice is not neutral is inaccurate.  The notice clearly describes the claims being asserted and also states NPC's position that it denies that it has improperly paid any of its current or former employees. Nonetheless, the notice is not a communication from the Court or from NPC—it is a communication from Plaintiffs' counsel to potential class members.  The fact that Plaintiffs are seeking authorization from the Court to send the notice rather than sending a written solicitation containing the advertising disclaimers requires that the positions of both sides be stated, but the purpose of the notice remains to inform all potential class members of their right to join an ongoing suit to avoid a multiplicity of cases.  It is Plaintiffs' counsel, not NPC's counsel, that can explain to them their rights here.  Thus, there is no basis to, as NPC requests, include contact information for NPC's counsel. *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007).  Finally, the fact that the notice identifies the court where the case is pending and the judge that presides over it by no means implies that the Court has decided the case one way or the other.  In fact, Plaintiffs specifically include an explanation in the notice that the Court has not decided whether NPC or Plaintiffs are correct, and that by authorizing the notice, the Court is not suggesting that Plaintiffs will win or lose the case. *See North v. Board of Trustees of Ill. State Univ.*, --- F.Supp.2d ---, 2009 WL 3769907, *6 (C.D. Ill. Nov. 9).

Fifth, NPC's request to limit the opt-in period to only 60 days is unjustified and self-serving.  NPC employs delivery drivers throughout the United States.  The goal is to notify as many potential opt-ins as possible about their right to join the lawsuit, not to slam the door on them.  The job of delivery driver is often a short-term job and many current and former drivers frequently move.  Compiling all the returned mail, researching new addresses for each and re-mailing for a class of this size will take time.  *See Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 5038508, *2 (D. Nev. Jan. 12).

Sixth, and finally, NPC's argument that the Court should not order production of names, addresses and telephone numbers is based on nothing more than an unjustified claim that Plaintiffs will use the information to "fish for additional opt-in plaintiffs." Plaintiffs need this information to comply with their legal and ethical obligations to communicate with class members.

NPC makes several factual and legal arguments about the notice that are just simply wrong.  Its intent is clear, however, and that is to alter the notice in such a way that would deflate the opt-in rate by scaring them away, confusing them so they do not know what to do, or telling them the law precludes their claims when in fact it does not.

## Conclusion

Plaintiffs have made substantial allegations, supported by extensive evidence, even at this early stage of discovery, that NPC has violated the FLSA and that Plaintiffs are similarly situated.  In accordance with the remedial purpose of the FLSA, this Court should conditionally certify this case as a collective action and immediately authorize notice to be issued to all eligible class members.

**Dated:**  February 22, 2010

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s Richard M. Paul III

George A. Hanson (KS #16805)
Richard M. Paul III (KS #17778)
Jack D. McInnes (KS #21898)
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101

and

**WEINHAUS & POTASHNICK**
Mark A. Potashnick, MO Bar # 41315
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:    (314) 997-9150
Facsimile:    (314) 997-9170

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing was filed with the Court via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records and as a result served on all counsel of record.

/s Richard M. Paul III

Attorney for Plaintiffs