UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY WASS and MARK SMITH, individually and on behalf of a class of others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>NPC INTERNATIONAL, INC.,<br><br>           Defendant. | Case No. 09-CV-2254 JWL/KGS |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**I.    OVERVIEW**

The motion to dismiss Plaintiffs' Second Amended Complaint filed by Defendant NPC International, Inc. ("NPC") asks this Court to adopt a level of specificity in pleading that is unheard of in any type of case and goes far beyond the pleading requirements set by the Supreme Court. In fact, NPC's motion goes so far as to contend that Plaintiffs' Complaint must set forth detailed allegations about not only the named plaintiffs, but all opt-in plaintiffs as well. The named plaintiffs Mark Smith and Jeffrey Wass have alleged far more than should be necessary to state a claim that NPC pays them net wages below the federal minimum wage and various state minimum wage laws, particularly given that much of the information about their claims resides with NPC. Plaintiffs have cured both pleading defects identified by the Court in its March 2, 2010 Memorandum and Order (Docket # 92), and thus NPC's motion should be denied.

1

## II. ARGUMENT

### A. Standard on a Motion to Dismiss

In its March 2, 2010 Memorandum and Order, this Court stated the pleading standard as:

> The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," or when an issue of law is dispositive.  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, and view all reasonable inferences from those facts in favor of the plaintiff. Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."

Docket # 92, p.3 (citations omitted).  Plaintiffs' Second Amended Complaint meets this pleading standard.

### B. Plaintiffs Have Stated Claims Beyond Any Speculative Level

In their Second Amended Complaint, Plaintiffs pled detailed calculations showing that their net wages fell below the applicable minimum wage.  Plaintiffs pled their hourly rates of pay, the amount of the applicable minimum wage rates over time, NPC's delivery reimbursement rates over time, the number of deliveries they made, and the total reimbursement amount they received for those deliveries; all of which factored into the calculations showing minimum wage violations.  (2nd Am. Compl., ¶¶ 25-27, 34-35). Plaintiffs further pled their average roundtrip mileage and approximate reimbursement rate per mile they received from NPC.  *Id*. at ¶¶ 28-29, 37-38.

While the approximate cost per mile to operate their vehicles for delivery purposes is properly the subject of expert testimony, and not something that is or should be within the knowledge of any of NPC's delivery drivers, Plaintiffs nevertheless provided detailed allegations using an approximation of automobile expenses the IRS business mileage reimbursement rate, which is $.55 per mile, and estimates from their knowledge of some of their expenses. *Id*. at ¶¶ 30-31.[1] Plaintiffs thus alleged that "NPC compensated Plaintiff Smith between $3.17 and $1.00 per hour less than the federal minimum wage of $6.55 per hour applicable during that time period" (*id*. at ¶ 33) and alleged that Plaintiff Wass also received net wages below the federal minimum. *Id*. at ¶ 42. These detailed pleadings raise the claims for minimum wage violations beyond any speculative level.

**C.     Plaintiffs Have Sufficiently Pled Collective Action Allegations**

Curiously, the majority of NPC's motion is targeted not at the allegations made by the named plaintiffs, but rather at their ability to represent a class of similarly situated employees and the absence of similarly detailed allegations about each opt-in plaintiff. Not surprisingly, NPC cites no authority for the proposition that a complaint must contain specific allegations about opt-in plaintiffs, nor what the purported cut-off point would be, if any, such that under NPC's purported pleading rules Plaintiffs would be required to re-plead each time a new delivery driver opted in to the case.

---

[1] NPC errantly uses Plaintiff Smith's $.35 per mile estimate as constituting the totality of his expenses, when Plaintiffs specifically pled that this number did not account for all vehicle expenses. Moreover, Plaintiffs expressly allege that such under-stated amount has been "documented" by Plaintiff Smith. *Id*. at ¶ 31. NPC also errantly attaches significance to the fact that Plaintiffs characterize the calculation of minimum wage deficiency suffered by Plaintiff Smith as an "illustration." Plaintiffs use the term "illustration" only to indicate that Plaintiff Smith's circumstances are representative of, and similar to, other putative plaintiffs.

3

The only purported basis for NPC's suggested new and expanded pleading standard is the Court's March 2, 2010 Memorandum and Order directing "plaintiffs" to cure the prior pleading deficiencies. But both named plaintiffs have cured the deficiencies identified in the Court's order and there is nothing in the order or in any prior FLSA case law to support the proposition that detailed allegations about any or all opt-in plaintiffs must be separately set forth in a complaint. NPC's proposed pleading standard is not based on existing case law but instead seeks to completely re-write the pleading standard in class and collective actions.

In any event, Plaintiffs' Second Amended Complaint contains numerous factual allegations about putative class members that plainly and unambiguously "raise a right of relief above the speculative level." Plaintiffs allege that delivery drivers incur per mile costs at least in the range determined by the IRS, AAA and other reputable companies, while NPC's formula provides them $.30 or less per mile driven, and only in successful deliveries. *Id*. at ¶¶ 15-19. Plaintiffs further plead that delivery drivers incur higher driving costs than average drivers because of the significant differences between delivering pizzas every day and normal day-to-day driving, because NPC underestimates the amount of mileage driven, and because NPC provides no reimbursement whatsoever for unsuccessful deliveries. *Id*. at ¶¶ 15, 17-19. These facts mathematically show class-wide minimum wage violations of $.25 per mile or more resulting from NPC's under-reimbursements. *Id*.[2]

---

[2] Plaintiff Smith was under-reimbursed by $.38 per mile using published cost studies. *Id*. at ¶¶ 27-30. This shows that the $.25 estimate is conservative and reasonable.

If delivery drivers drive an average of only 12 miles per hour on the job, they are under-reimbursed for car expenses by $3.00 per hour (4 trips per hour x 3 miles per average trip).  *Id.* at ¶¶ 28, 32, 36.  And this is a conservative calculation based on the allegation that "many delivery drivers commonly make approximately 3 to 5 deliveries per hour" and that Smith and Wass both averaged approximately 5 miles per delivery.  *Id*.

Plaintiffs allege that NPC's delivery drivers have not been paid more than $3.00 per hour over the federal minimum wage during the class period.  *Id*. at ¶ 43.  Because the putative plaintiffs "were paid approximately 'at the applicable federal or state minimum,'" i.e., "plaintiffs were always paid at the state-law minimum" (Docket # 92, p. 14), and none of the 28 states in which NPC operated during the class period had minimum wages as high as $3.00 over the federal minimum wage at any time during the class period, Plaintiffs have sufficiently alleged the factual basis for the minimum wage claims.  In fact, NPC identifies only two states, Oregon and Washington, that had minimum wages roughly $2.00 above the federal minimum at some time during the class period.[3]  And even as to those states, the facts pled in Plaintiffs' Second Amended Complaint mathematically show company-wide violations well beyond the gap between state and federal minimum wage.

---

[3] Defendants' statements that Oregon's minimum wage was at least $2.10 higher than the federal minimum wage from 2006 through 2008 and Washington's was $2.00 or higher from 2006 to 2009 are untrue.  From July 24, 2007 through December 31, 2007, Oregon's minimum wage was $1.95 above the federal minimum and from July 24, 2008 to December 31, 2008, it was $1.40 above the federal minimum. From July 24, 2008 to December 31, 2008, Washington's minimum wage was $1.52 above the federal minimum and from July 24, 2009 to the present has been $1.30 above the federal minimum.  No other states in which NPC operates had minimum wages this high.  Moreover, only about 30 of NPC's 1,061 total stores are located in Oregon and Washington and Plaintiffs may or may not choose to later exclude drivers from those states from the scope of any certification motion.

Moreover, it is reasonable to infer that delivery drivers performing the same job for the same employer who are subject to the same policies and practices incur similar expenses to Plaintiffs Smith and Wass, and are also under-reimbursed. Docket # 92, p. 3 (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (court must view all reasonable inferences from those facts in favor of the plaintiff)). NPC's unsupported assertion that Mr. Smith's circumstances and expenses are somehow "unique" is nothing but a factual argument that is not properly determined on a motion to dismiss.

The thrust of NPC's argument is that while it may reasonably approximate a delivery driver's expense reimbursement, Plaintiffs may not even *plead* a violation of their statutory right to be paid a minimum wage after expense reimbursement unless they can precisely calculate their reimbursements, expenses, and wages, even though those records reside largely with NPC. Further, it is completely unreasonable to expect minimum-wage delivery drivers to be able to make this calculation to know their rights are being violated, much less to keep records of all expenses and reimbursements when NPC did not ask them to do so. Plaintiffs are entitled to show failure to "reasonably approximate" expenses on the same aggregate basis on which NPC's reimbursement formula is based.[4]

---

[4] While NPC admittedly bases its estimates of automobile expenses on a generalized study using standard vehicle and cost assumptions, it simultaneously demands that Plaintiffs base their complaint on the individual costs incurred by each driver rather than published studies determining the cost of operating a vehicle, identifiable factors resulting in higher expenses to pizza delivery drivers than experienced by the general population, a sufficient sampling of delivery drivers interviewed by Plaintiffs' counsel, and expert testimony. In sum, NPC demands an unrealistic standard, which NPC itself cannot satisfy. Just as the IRS, AAA, other reputable sources, and NPC's own consultant, Runzheimer International, are able to calculate the cost of operating a vehicle based on common factors experienced by persons driving under similar conditions, without determining the specific costs incurred by each such driver, so are Plaintiffs.

6

In addition to pleading facts that mathematically demonstrate company-wide violations, Plaintiffs specifically allege in detail that all putative class members, like Plaintiffs Smith and Wass, were subject to the same basic facts, policies, practices and conditions that result in the minimum wage violations, including having to maintain and pay for safe, legally-operable, and insured automobiles; incurring significant automobile expenses; being reimbursed much less than the IRS rate or amounts reflected by reputable studies; and being subject to the same terms of NPC's Delivery Driver Reimbursement Policy.  (2nd Am. Comp., ¶¶ 13-16).

Plaintiffs further expressly plead that they and the putative class are subject to common facts, policies, practices and conditions resulting in company-wide minimum wage violations.  (*Id*., ¶¶ 12-20, 42-45).  NPC's assertion that Plaintiffs fail to allege similar factors affecting Plaintiffs and the putative class ignores Plaintiffs' allegations.[5] *Id.*

Plaintiffs' Second Amended Complaint far exceeds the pleading standard set forth in *Twombly*, which only requires that sufficient facts be pled to show a plausible case for minimum wage violations.  *Id*. at 555.  Plaintiffs do not need to quantify all putative class members' damages at the pleading stage.  *Id*.  Requiring Plaintiffs to know their precise wage rates, the reimbursement amounts they received, and the cost of operating their

---

[5] NPC's contention that "Nowhere-not once-does the Complaint allege that any of Smith's individual estimates of expenses or the delivery conditions that drove those expenses are the same as, or even similar to, those of Plaintiff Wass, the Opt-in Plaintiffs or all NPC delivery drivers in the putative class…," is shown untrue by Paragraphs 12-20 and 42-45 of the Second Amended Complaint.

7

vehicle at all times during a three year period before obtaining the benefits of discovery is unreasonable and beyond the requirements of any imaginable pleading standard.[6]

In fact, NPC's argument has previously been rejected. *See, e.g., Badgett v. Tex. Taco Cabana, L.P.*, 2006 WL 367872 (S.D. Tex. Feb. 14). There, three short-term employees pled company-wide violations of the FLSA. *Id*. at *3. The company argued, like NPC, that:

> as a matter of substantive law . . . the court should not allow three plaintiffs to proceed with a massive collective action unless they have a reasonable basis for commencing such a substantial undertaking. As such, in the absence of further specificity, the court should dismiss the three collective action counts pursuant to Rule 12(b)(6). In no circumstances should three isolated plaintiffs with brief work histories be provided discovery and disclosure rights into an entire regional system without affirming through reasonably specific allegations, that they have collected sufficient information as required by Rule 11 to proceed system-wide. *Id*. at *4 (Edit in original).

---

[6] Courts do not even require a showing that all class members are subject to the same violations at the conditional certification stage. Rather, FLSA collections actions are often certified based on evidence submitted by only a sampling of putative class members. See, e.g., *Dernovish v. AT&T Operations, Inc.*, 2010 WL 143692, at *2 (W.D. Mo. Jan. 12) (rejecting defendant's request to limit certification to only the two call centers where declarants worked); *Gipson v. Southwestern Bell Tele. Co.*, 2009 WL 1044941, at *3-4 (D. Kan. April 20) (same); *Sharpe v. APAC Customer Servs., Inc.*, 2010 WL 135168 (W.D. Wis. Jan. 11) (certifying class of eight call centers based on declarations from "a small percentage of the potential class"); *Levy v. Verizon Info. Servs., Inc.*, 2007 WL 1747104, at *5 (E.D.N.Y. June 11) (based on a "representative sample" of employees in nine offices, "all TSRs employed in 19 offices are similarly situated for the limited purpose of receiving notice"); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 537, 543-44 (N.D. Cal. 2007) (granting conditional certification at 500 facilities based on thirteen declarations); *Burch v. Qwest Communications Int'l*, 500 F.Supp.2d 1181, 1188 (D. Minn. 2007) (conditionally certifying nationwide class of call center employees where plaintiffs had produced declarations from "a minority" of call centers); *White v. MPW Indus. Serv. Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006) (certifying collective action and ordering company-wide notice, even though declarants worked at only a few of the company's locations); *Fisher v. Mich. Bell Tele. Co.*, 665 F. Supp. 2d 819, 828 (E.D. Mich. 2009) ("if Plaintiffs provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations, then the court is justified in 'sending notice to similarly situated employees' at all locations at issue in the litigation") (quoting *Russell v. Ill. Bell Tele. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008)).

The company asked the court to "rule in [their] favor, establish reasonable pleading standards for this and other FLSA cases and require the plaintiffs to comply with those standards before moving forward in a collective action."  *Id*.  The *Badgett* court, however, rejected this argument as lacking any legal basis.  *Id*.

NPC's pleading argument is based less on the pleading standards and more on its assertion that the putative class members are not similarly situated.  This related argument has also been rejected.  Whether the named plaintiffs are similarly situated to the putative class is determined at the certification stage, not on a motion to dismiss.  NPC cites no authority for its position, nor does any exist.  In fact, it has also been rejected.  *See, e.g., Tahir v. Avis Budget Group, Inc.*, 2009 WL 4911941 (D.N.J. Dec. 14).  There, in denying a motion to dismiss, the defendant argued that a collective action was improper because violations and damages must be determined on an individual basis.  *Id*. at *7.  The court held that that issue would be determined at the conditional certification stage, not on a Rule 12(b)(6) motion.  *Id*. at *7-8.  This argument should be quickly dismissed.

### E.     Plaintiffs Have Sufficiently Alleged Willfulness

NPC's argument that Plaintiffs plead insufficient facts to properly allege a "willful" violation should also be rejected.  Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Based on this rule, the substantial majority of federal district courts have held that a general averment of willfulness is sufficient to trigger the FLSA's three-year statute of limitations.  *Noble v. Serco, Inc.*, 2009 WL 1811550, *3-4 (E.D. Ky. Jun. 25) (citing

9

cases); *Hodge v. United Airlines*, 666 F.Supp.2d 14 (D.D.C. 2009) (finding willfulness sufficiently alleged where complaint stated "[i]n violation of the [FMLA], Defendant knowingly and intentionally rejected or refused to accept a request for leave for medical attention, and ultimately terminated [plaintiff's] employment."); *Docken v. Minnesota*, 2009 1086522, *2 (D. Minn. Apr. 22); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F.Supp.2d 1026, 1036 (E.D. Wis. 2008).  Further, the fact that NPC's reimbursement rate is so far below the published reimbursement rates broadly used in American commerce is sufficient to infer that NPC knows its reimbursement formula is not adequate.

NPC relies on *Colson v. Avnet, Inc.,* 2010 WL 339047, *5 (D. Ariz. Jan. 27), which represents the minority position, as well as *Deleon v. Time Warner Cable, LLC*, 2009 U.S. Dist. Lexis 74345 (C.D. Cal. Jul. 17) and *Jones v. Casey's Gen. Stores*, 538 F.Supp.2d 1094, 1102 (S.D. Iowa 2008), which do not specifically examine the sufficiency of pleading facts to support willfulness.

**F.     Plaintiffs Sufficiently Allege State Minimum Wage Violations**

Lastly, NPC asks the Court to dismiss Plaintiffs' claims for violation of state minimum wage laws, even though such claims are necessarily proved if Plaintiffs prevail on their claim for violation of the lower federal minimum wage.  Plaintiffs plead that 13 states in which NPC operated required wages higher than the federal minimum during all or part of the class period.  *Id*. at ¶ 76.  Obviously, if Plaintiffs show that NPC's under-reimbursement "cuts into" the lower federal minimum, it also necessarily reduces net wages below a higher state minimum wage.  For the same reasons set forth above, Plaintiffs have adequately alleged their claims for violation of state minimum wage laws.

Further, contrary to NPC's claims, Plaintiffs have alleged in detail common questions of fact and law resulting in company-wide diminution of wages below the respective state minimums. As this Court previously recognized, Plaintiffs have sufficiently alleged that putative plaintiffs "were always paid at the state-law minimum." Docket # 92, p. 14. Accordingly, any failure to reasonably approximate reimbursements necessarily "cuts into" the state minimum. *See, e.g., Chan vs. Sung Yue Tung Corp.*, 2007 WL 313483, *22 (S.D.N.Y. Feb. 1, 2007) (unreimbursed job expenses "necessarily" decreased minimum wage employees' net pay below minimum wage).

NPC also argues that Plaintiffs' claims for violation of state minimum wage laws should be dismissed because Plaintiffs' prior Complaint only alleged a violation of Colorado's minimum wage law, while Plaintiffs' new Complaint alleges a violation of the minimum wage laws of the 13 states that require wage rates higher than the federal minimum wage in which NPC does business.[7] NPC argues Plaintiffs exceeded the scope of the Court's leave to amend by adding allegations under these additional state laws.

---

[7] Plaintiffs have suffered the same injury as the classes they seek to represent -- payment of less than minimum wage as a result of NPC's company-wide delivery driver reimbursement policy. They therefore have standing to pursue on behalf of the class Count II in its entirety. Importantly, each of the state laws pled in Count II is substantially similar to the others in providing for a minimum wage higher than the federal minimum wage. It would be perfectly appropriate to appoint Plaintiffs to represent class members from all or groups of other states. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 104 (D. Mass. 2008) ("In a multi-state class, the case law does not create a per se rule that the Court must appoint a separate representative for each state or even each group. There is no substantial conflict of interest between the three state groupings which would necessitate a class representative from each group."). That issue is not presented by the pending motion, and in any event would be inappropriate to address at this early stage. Standing, the adequacy of class representatives, and whether a class can be certified under multiple states' laws are issues typically addressed at the class certification stage. *See Hernandez v. Meadows*, 209 F.R.D. 665, 667 (S.D. Fla. 2002) ("It is well established that *prior to certification of a class*, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least on named representative has Article III standing to raise each claim.") (emphasis added).

First of all, Plaintiffs' Count II does not change the factual analysis with respect to their minimum wage claims based on under-reimbursed automobile expenses, but merely seeks to preserve putative class members' claims to a full statutory wage. The challenged amendment was also proper here considering the practical realities of this litigation. At nearly all points in this case, the complaint has been the subject of multiple motions to dismiss and for judgment on the pleadings. NPC points to fact that the scheduling order provides that motions to amend were to be filed by November 2, 2009, but at that point NPC had not even filed its multiple motions for judgment on the pleadings, much less produced discovery identifying the states in which NPC employed delivery drivers. Because of NPC's multiple motions, this case is in reality in its infancy and Plaintiffs' effort to protect the rights of putative class members should be permitted.

To the extent the Court accepts NPC's argument that the Court's grant of leave to amend was limited, Plaintiffs request leave to amend—and the facts and circumstances of this case justify granting such leave. *See* Fed. R. Civ. P. 15 ("The court should freely give leave [to amend] when justice so requires."). Plaintiffs could seek additional leave to amend after the case is conditionally certified as a collective action and notice has been completed, but Plaintiffs suggest that the most practical approach is to proceed on the Second Amended Complaint, which complies fully with the Court's grant of leave to amend.

### III.  CONCLUSION

Plaintiffs' Second Amended Complaint corrects the two pleading deficiencies identified by the Court.  Plaintiffs have specifically pled facts showing specific amounts of automobile expense reimbursements, actual vehicle expenses per mile driven, and pay rates.  They have also pled facts showing that Plaintiff Smith's data is representative of the putative class.  NPC's arguments to the contrary are nothing but a premature attempt to argue the merits on a motion to dismiss.  NPC's motion should be denied in full, and Plaintiffs should be allowed to conduct discovery and proceed to conditional certification.

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

 /s/ Jack D. McInnes
George A. Hanson (KS #16805)
Richard M. Paul III (KS #17778)
Jack D. McInnes (KS #21898)
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:    (816) 714-7100
Facsimile:     (816) 714-7101

and

**WEINHAUS & POTASHNICK**
Mark A. Potashnick
(*pro hac* application forthcoming)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:    (314) 997-9150
Facsimile:     (314) 997-9170

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing was served on attorneys of record for Defendant NPC International, Inc., Lori R. Schultz and Mark C. Tatum, Shook, Hardy & Bacon, L.L.P., 2555 Grand Blvd., Kansas City, Missouri, 64108-2613 via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

                                                    /s Jack D. McInnes
                                                Attorney for Plaintiffs