## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY WASS and MARK SMITH,     )
individually and on behalf of a class of     )
others similarly situated,     )
     )
           Plaintiffs,     )
     )
        v.     )     Case No. 09-2254-JWL
     )
NPC INTERNATIONAL, INC.,     )
     )
          Defendant.     )
     )
_____)

## MEMORANDUM AND ORDER

Plaintiffs are or were pizza delivery drivers employed by defendant, who owns Pizza Hut restaurants in 28 states. Plaintiffs allege that defendant failed to reimburse them sufficiently for vehicle-related expenses, and that defendant therefore failed to pay them the applicable minimum wage under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* This matter presently comes before the Court on plaintiffs' motion for conditional certification of this action as a collective action under Section 216(b) of the FLSA (Doc. # 136).[1] For the reasons set forth below, the Court **grants** the motion, conditionally certifies the case as a collective action, and makes

---

[1] Plaintiffs also assert class action claims, alleging violations of the minimum-wage laws of 13 different states, on behalf of drivers employed by defendant in those states. Those state-law claims are not at issue here, however, as plaintiffs have not yet sought class action certification.

further orders relating to the provision of notice to putative class members.

## I. <u>Background</u>

On May 12, 2009, plaintiff Wass filed the original complaint in this action, in which he based his federal FLSA claims on defendant's alleged failure to reimburse the actual vehicle-related and other expenses incurred by him and other drivers. Defendant moved to dismiss on the grounds that Mr. Wass had failed to allege defendant's knowledge of its under-reimbursement of drivers and that the applicable regulations permit it to approximate reasonably its drivers' expenses. While that motion was pending, plaintiffs Wass and Smith filed an amended complaint. In that complaint, plaintiffs cured the first claimed pleading deficiency by alleging defendant's knowledge, but they still based the minimum-wage claims on the alleged failure to reimburse the drivers' actual expenses.

Defendant moved for judgment on the pleadings with respect to plaintiffs' FLSA claims, and by Memorandum and Order dated March 2, 2010, the Court granted the motion. The Court agreed that under the applicable federal regulations, defendant may reasonably approximate drivers' vehicle expenses in reimbursing them, and that plaintiffs therefore had not stated a cognizable FLSA claim in alleging that defendant had failed to pay their actual expenses. The Court further concluded that plaintiffs did not plead sufficient facts in their first amended complaint to state a plausible claim for relief under the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). The Court ruled that plaintiffs' claims of minimum-wage violations resulting from under-reimbursement of expenses required a greater degree of specificity in pleading than might be necessary in a straightforward FLSA case seeking unpaid amounts. The Court concluded that plaintiffs had not satisfied *Twombly* because they had only conclusorily alleged that defendant's under-reimbursement had brought the drivers' wages below the applicable federal minimum wage.

With the Court's leave, plaintiffs filed a second amended complaint, by which they alleged (individually and as a collective action) that defendant failed to estimate reasonably their vehicle-related expenses and that the resulting under-reimbursement was great enough to reduce their wages below the federal minimum, in violation of the FLSA. On June 24, 2010, the Court denied defendant's subsequent motion to dismiss as it related to Mr. Smith's individual claims and the sufficiency of plaintiffs' allegation of willfulness, but it did dismiss Mr. Wass's claims and plaintiffs' collective and class action claims. With respect to Mr. Wass's claims, the Court concluded that he had failed to allege sufficient facts to show the amount or magnitude of his alleged under-reimbursement by defendant, and that he had therefore failed to state a plausible claim that defendant had failed to approximate reasonably his vehicle expenses. With respect to the collective and class claims involving defendant's drivers generally, the Court first rejected defendant's argument that plaintiff had failed to allege the amount of their actual expenses or the amount of their actual under-reimbursements. Citing plaintiffs' allegations that drivers received 30 cents per mile at most, that studies have shown that

drivers generally incur costs at a rate of 45 to 55 cents per mile, and that defendant's drivers incurred more expenses than drivers generally, the Court concluded that plaintiffs had alleged sufficient facts showing a reimbursement gap significant enough to support a plausible claim that defendant failed to approximate reasonably its drivers' expenses. Nevertheless, the Court held that because plaintiffs had not alleged any facts relating to the wage rates of the drivers, there was no basis from which to infer that any under-reimbursement brought the drivers' wages below the federal or state minimums.

Plaintiffs then filed a motion for leave to file a third amended complaint, by which they attempted to cure yet again the pleading deficiencies under *Twombly* cited by the Court. On September 1, 2010, the Court granted the motion for leave, concluding that the most recent complaint did state plausible claims by Mr. Wass and plausible collective and class action claims on behalf of other drivers. With respect to Mr. Wass, the Court noted that plaintiffs have now alleged specific figures that yield an under-reimbursement of approximately $1.62 per hour, which gap is sufficiently large to permit a plausible inference that defendant did not reasonably approximate Mr. Wass's expenses in reimbursing him; and that because Mr. Wass was paid the federal minimum wage, such an under-reimbursement supports a claim for a minimum-wage violation.

With respect to the collective and class action claims, the Court noted that plaintiffs have alleged specific figures that yield an under-reimbursement of at least $1.50 per hour; and that, in light of the allegations that defendant's drivers were paid "at or very near" the applicable federal or state minimum wage and that no opt-in plaintiff

was paid more than $1.10 over the federal minimum, such a gap is sufficiently large to support a plausible claim that the drivers' pay fell below the federal minimum wage. The Court again rejected defendants' argument that plaintiffs could not plead a plausible collective action claim without the drivers' knowledge of their actual expenses incurred. In that regard, the Court concluded that "[i]t is not implausible to suggest that drivers may be able to estimate their expenses without knowing their actual expenses incurred." The Court further noted that plaintiffs had not merely stated conclusions in claiming under-reimbursement, but that "plaintiffs have pleaded specific facts supporting the allegations that defendant's drivers incur greater expenses than drivers in general and that Mr. Smith's documented expenses represent a conservative estimate for other drivers." The Court also rejected defendant's argument that reimbursement rates vary by region, as plaintiffs alleged that the under-reimbursement gap is consistent across the country and "one may reasonably infer that reimbursements are higher in areas where expenses are thought to be higher." Finally, the Court noted that any arguments relating to states with the highest state-law minimum wage rates were better reserved for collective and class-action certification proceedings.

After plaintiffs filed their third amended complaint, defendant moved for summary judgment on Mr. Wass's individual FLSA claim, based on Mr. Wass's deposition testimony that he did not know his actual expenses incurred or even how many deliveries or miles he averaged on the job. In a Memorandum and Order issued December 14, 2010, the Court noted its consistent rejection of the argument that a driver

must know his actual expenses incurred.  The Court concluded, however, that Mr. Wass had not satisfied his burden in opposition to summary judgment because, although he argued that his expenses and mileage could be estimated, he had not provided any such evidence.  The Court thus gave Mr. Wass additional time to submit evidence or an affidavit under Rule 56(d).  That motion for summary judgment remains pending.

Plaintiffs now seek conditional certification of the present action as a collective action pursuant to Section 216(b) of the FLSA, with the class consisting all persons employed by defendant as delivery drivers at any time during the past three years. Plaintiffs also request an order requiring defendant to provide to plaintiffs' counsel, within 14 days, "a computer-readable data file containing the name, last known address, employee ID number, dates of employment, and restaurant store name and number" for each present or former employee within the class.  Finally, plaintiffs seek authorization to send notice of the action to such employees, in a form proposed by plaintiffs, with a 90-day opt-in period, and plaintiffs request an order requiring defendant to post such notice in each of its stores.

## II.    Request for Conditional Collective Action Certification

### A.    *Applicable Standard*

Section 216(b) of the FLSA provides for an opt-in class action on behalf of employees who are "similarly situated" to the plaintiffs.  *See* 29 U.S.C. § 216(b). Although the FLSA does not define "similarly situated," the Tenth Circuit has approved

an ad hoc approach by which a district court determines on a case-by-case basis whether the class members are similarly situated for purposes of Section 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). The Tenth Circuit has also endorsed a two-step approach for this determination. *See id.* First, the district court makes an initial "notice stage" determination of whether the plaintiffs are similarly situated. *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). For conditional certification at the "notice stage," the court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id.* at 1103. At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are similarly situated using a stricter standard. *Id.* at 1102-03. During this "second stage" analysis, the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendant that appear to be individual to each plaintiff, and fairness and procedural considerations. *Id.* at 1103.

In this case, defendant argues that the Court, in making this determination, should

consider facts elicited through discovery to date. In so arguing, defendant appears to suggest that the Court should not apply the lenient, "notice stage" standard, but instead should apply a stricter standard in light of the discovery that has occurred thus far. Although defendant does not expressly request application of *Thiessen*'s second-stage certification standard at this time, it does state in its brief that, when discovery has taken place, "some courts dispense with the first-stage [*sic*] entirely and proceed directly to the stricter, second-stage [*sic*]." The Court, as it has done consistently in cases at this stage of the litigation, rejects any such invitation to bypass the first-stage certification standard in this case, in which no scheduling order concerning merits discovery has been entered and no trial date has been set. *See Braun v. Superior Indus. Int'l, Inc.*, 2010 WL 3879498, at *1 (D. Kan. Sept. 28, 2010) (Lungstrum, J.); *Garcia v. Tyson Foods, Inc*., 255 F.R.D. 678, 686 (D. Kan. 2009) (Lungstrum, J.).

Thus, the Court looks to the "substantial allegations" in plaintiffs' amended complaint as supplemented by evidence submitted by plaintiffs. *See Braun*, 2010 WL 3879498, at *1. The Court has considered the evidence submitted by defendant, as requested, in determining whether plaintiffs have made "substantial allegations" supporting conditional certification, as required by *Thiessen*; however, merely contrary evidence will not preclude certification. *See Barnwell v. Corrections Corp. of Am.*, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) (Lungstrum, J.) ("the fact that evidence exists negating plaintiffs' claims does not warrant denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of

8

a policy").

B.    *Analysis*

The Court concludes in this case that plaintiffs have made substantial allegations and submitted evidence that the putative class members—defendant's delivery drivers—were together the victims of a single policy that resulted in the their failure to receive the federal minimum wage. First, plaintiffs have submitted evidence, and defendant does not dispute, that the defendant's drivers are similarly situated with respect to the requirements of their particular job. For instance, defendant required all of its delivery drivers to have and maintain their own vehicles, pass safety checks, maintain insurance, and sign a driver agreement. Second, plaintiffs have submitted evidence that, as a matter of policy, defendant paid all of its drivers at or very near the federal minimum wage. Third, plaintiffs have alleged and submitted evidence that defendant's drivers have all been subject to a central expense-reimbursement model and policy that defendant intended to approximate the experience of a typical delivery driver. Fourth, as the Court has ruled with respect to the adequacy of plaintiffs' complaints, plaintiffs have made substantial allegations that defendant's policy did not result in reimbursements that reasonably approximated drivers' vehicle-related expenses incurred on defendant's behalf, and that the under-reimbursements were large enough to bring drivers' wages below the federal minimum wage. Thus, the Court concludes that plaintiffs have satisfied the Tenth Circuit's lenient, notice-stage standard for condition certification of a collective action under the FLSA.

Defendant makes a number of arguments in opposing certification. First, defendant urges the Court to follow the holding in the recent case of *Lin v. Benihana National Corp.*, __ F. Supp. 2d __, 2010 WL 5129013 (S.D.N.Y. Dec. 15, 2010), in which in an "identical context" (according to defendant), the court refused to certify an FLSA collective action on behalf of delivery persons at a restaurant. Not only was *Lin* decided under a standard different from that used in the Tenth Circuit for certification at this stage, *see id.* at *3, the case is also easily distinguished on the facts. In *Lin*, the court noted that the plaintiffs had not made specific allegations concerning their vehicle expenses and had not even stated whether such costs reduced their wages below the federal minimum. *See id.* at *7. Moreover, the plaintiffs had made only conclusory allegations concerning other employees' failure to receive reimbursements. *See id.* Finally, in the absence of more specific allegations and in light of the fact that the employees drove different types of vehicles that would have required different levels of maintenance, the court was unwilling to speculate about other employees' expenses and wage calculations. *See id.*

In the present case, on the other hand, plaintiffs have made substantial and specific allegations, tested by multiple motions to dismiss, that defendant's drivers incurred expenses and that they were under-reimbursed to a degree sufficient to reduce their wages below the federal minimum. Moreover, plaintiffs' allegations are supported by evidence submitted with the instant motion, including declarations by other drivers who have already filed consents to opt in to the suit. Thus, the Court need not engage

10

in the kind of speculation that would have been required for certification in *Lin*. Plaintiffs' substantial allegations and evidence are sufficient to satisfy the Tenth Circuit's standard for certification at this stage.

Defendant also argues that the Court should not rely on plaintiffs' allegations because evidence obtained in discovery has proved those allegations to be unreliable. In making this argument, defendant revives its consistent theme that the drivers should not be permitted to pursue claims without knowledge of their actual expenses incurred for defendant's benefit. Specifically, defendant argues that plaintiffs' and opt-in plaintiffs' "boilerplate" declarations, in which they state that their reimbursements from defendant have been inadequate to reimburse them for expenses incurred on the job, are contradicted by their testimony in depositions that they do not know the actual amounts of their incurred expenses. Although defendant makes this statement generally, it has cited only the deposition of a single opt-in, Richard Renfrow, who testified that he did not know his actual costs incurred and did not know if he had been "reimbursed properly." Defendant also cites similar testimony by plaintiff Wass and testimony by plaintiff Smith that, although he had records of his expenses, he could not state the exact figure for his effective wage rate below the federal minimum.

The Court rejects this argument, as defendant has not provided evidence showing that the declarations, including the statements that the declarants were under-reimbursed, should be considered "sham" and thus disregarded entirely (along with all of plaintiffs' allegations). As the Court noted in a previous order, it is not necessarily implausible that

a driver could know that he was under-reimbursed without knowing his exact costs. Indeed, plaintiffs cite to the deposition testimony of several drivers, including Messrs. Wass and Renfrow, that they believed that the reimbursements did not cover all of their vehicle expenses because the reimbursements barely covered or did not even cover the single expense of gasoline. The fact that Mr. Smith had not calculated his effective wage rate does not render unreliable his statement that his reimbursements did not cover his expenses, of which he had kept records.

Certainly, the fact that drivers do not know or did not track their actual costs may serve as evidence rebutting plaintiffs' claims; as noted above, however, the existence of contrary evidence does not preclude certification at this stage, so long as plaintiffs have made the requisite substantial allegations. For the same reason, the sworn statements by other drivers that they were *not* under-reimbursed, submitted by defendant with its brief, are irrelevant at this stage.

Defendants also argue that plaintiffs are not similarly situated because their individual vehicle expenses do vary (as demonstrated by evidence obtained thus far) and must vary, as they depend on the type of car, facts about the driver (with respect to insurance), and even the topography of the drivers' routes. Defendants insist that mini-trials for every driver will be necessary for purposes of determining liability. The existence, effect, and predominance of such individual questions and defenses, however, would only be relevant to second-stage certification, *see Thiessen*, 267 F.3d at 1103, and thus they do not bear on the Court's present inquiry.

Defendant next argues that its reimbursement plans do not represent a single policy or plan for purposes of determining whether plaintiffs are similarly situated. Defendant notes that it has used six different reimbursement plans; that the reimbursement figures used for each such plan vary for each state, to account for regional cost differences; and that those figures are updated periodically to account for changes in costs, particularly with respect to gasoline.[2] The Court rejects this argument as well.

The differences in the six plans are not great and do not contradict the fact that defendant employed a common reimbursement policy for drivers. For instance, Plan One has not been used since June 2007, when defendant memorialized its present policy, and Plans Three and Four each apply to a single store. Plan Two, a three-tier model that provides different reimbursement rates for single-, double-, and triple-deliveries, is used by the great majority of defendant's stores. Plan Six is the same as Plan Two with the triple-delivery rates omitted. Plan Five, which provided a single reimbursement figure intended to represent a blended average of Plan Two's three tiers, was used for stores transitioning to defendant's ownership and is no longer used.

Moreover, plaintiff has submitted evidence that defendant used the same assumptions (type and age of vehicle, type of driver) in determining its reimbursement

_____

[2]Defendant also notes that some plaintiffs and opt-in plaintiffs received extra reimbursements at particular times. The fact that exceptions may have been available does not mean that defendant did not employ a common policy for reimbursing drivers, and any such individualized questions apply only at the second stage of certification.

rates under all of the plans in order to approximate the general costs for its typical delivery driver. Defendant also used the same assumptions regarding the average distance for single-, double-, and triple-deliveries for each of its plans. Thus, defendant has used a single method, based on these assumptions, for setting reimbursement rates for all of its drivers. It is that common method or policy that plaintiffs challenge as inadequate. Furthermore, the variations between states and the periodic updates to the plans are intended to account for regional differences and change over time for the costs. Thus, as the Court noted in a prior order, to the extent that the underlying method and assumptions are faulty (as plaintiffs allege), the amount of under-reimbursement would remain fairly constant across the country and over time. Any significant variations among states or plans or time periods may also be addressed by the use of sub-classes as necessary at the final certification stage.

As noted above, plaintiffs have made substantial allegations, supported by numerous declarations, that defendant's common method of reimbursing drivers does not reasonably approximate their expenses, and that the resulting under-reimbursements are large enough to reduce drivers' wage rates below the federal minimum. Plaintiffs have also submitted evidence that defendant hired its consultant to construct the reimbursement model in an effort to save costs, and that defendant pays other employees the higher IRS rate for vehicle expenses. Those facts also support plaintiffs' claim that defendant's reimbursements for its drivers were insufficient.

Finally, defendant notes that at various times many of its drivers were paid at a

14

rate exceeding the federal minimum, particularly in states with higher state-law minimums, and it argues therefore that plaintiffs cannot show that they are similarly situated with respect to whether any under-reimbursements caused federal minimum-wage violations. The Court disagrees. As noted in the prior orders, plaintiffs have alleged that drivers were paid at or near the federal minimum wage and that the under-reimbursements were of a magnitude sufficient to reduce drivers' wage rates below the minimum wage. Plaintiffs have now supplemented those allegations with evidence that, pursuant to written policies, defendant paid its drivers a maximum of $7.25 per hour—the federal minimum since July 2009—in all but four states that have higher state-law minimums, in which case, drivers have been paid their applicable state-law minimum. Certainly, as defendant points out, some drivers have been paid more than the federal minimum at various times during the three-year class period. As previously noted, however, plaintiffs have made substantial allegations that the reimbursement gap was large enough to cover those pay rates over the federal minimum for at least some period in every state. Again, at the final certification stage, the Court can address any questions concerning whether, based on the evidence, certain time periods or certain states should be excepted from the class definition or serve as the basis for sub-classes.[3]

Accordingly, for the foregoing reasons, the Court concludes that certification of

---

[3]Defendant also notes that drivers receive tips. Plaintiffs have alleged, however, that defendant has not included tips in determining its compliance with the federal minimum-wage law, and defendant has not challenged that allegation. Therefore, the fact that drivers may receive tips is not relevant to the present analysis.

this action as a collective action under Section 216(b) of the FLSA is appropriate. Defendant has not specifically challenged plaintiffs' definition of the putative class. Therefore, the Court certifies a collective action class consisting of all delivery drivers employed by defendant at any time in the three years preceding the date of this order. Plaintiffs' counsel is ordered to contact the Magistrate Judge by **April 4, 2011**, to initiate the process of setting up a scheduling conference to address the schedule for the remainder of the case.

### III.    Notice to Class Members

As noted above, conditional certification facilitates the dissemination of notice to potential class members.  Plaintiffs have provided a proposed notice and consent form to be sent to class members.  Defendant objects to certain language in and omissions from plaintiffs' proposed notice.  Defendant also seeks a 60-day opt-in period instead of the 90-day period proposed by plaintiffs.  Finally, defendant opposes plaintiffs' request for an order requiring defendant to post the notice in its stores.

#### A.    *Defendant's Specific Objections to the Proposed Notice*

"Under the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."  *Cretin-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009).  The Court addresses in turn defendant's specific objections to the notice and consent forms.

1.     Defendant objects to the language of the "Re:" line at the beginning of the proposed notice, which reads: "Re: Lawsuit Regarding Claims for Alleged Unreimbursed Automobile Expenses/Unpaid Minimum Wages."  Defendant argues that such language does not accurately describe the lawsuit because there is no reimbursement requirement per se and plaintiffs must show that their compensation fell below the minimum wage. The court **overrules** this objection.  The language, in the context of the entire notice, is not inaccurate or misleading, as the notice adequately describes plaintiffs' claims in language immediately following this line.

2.     Defendant argues that the notice is misleading because multiple statements in the notice improperly imply that individuals give up rights and effect a "waiver" by failing to opt in.  The Court **overrules** this objection, as the notice states in multiple places that individuals do not waive rights to assert claims against defendant by failing to return the consent form.

3.     Defendant objects that the notice does not inform putative class members that they may have to pay costs if plaintiffs do not prevail in the suit.  In opposing such an addition, plaintiffs cite cases in which such language was not required, including *Gieseke v. First Horizon Home Loan Corp.*, 2006 WL 2919076 (D. Kan. Oct. 11, 2006). In *Gieseke*, the court reasoned as follows:

> Several courts have declined to require a warning about costs because (1) the FLSA is silent as to whether prevailing defendants may recover their costs, and (2) the warning could discourage potential plaintiffs from participating.  *See Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 608 (W.D. Wis. 2006) (collecting cases).

*Id.* at *2.

Defendant, on the other hand, cites to *Cretin-Miller*, a more recent case from this district in which the court considered this issue at some length. *See Cretin-Miller*, 2009 WL 2058734, at *3-4. In that case, the court concluded that because some courts *have* awarded costs to prevailing defendants in FLSA cases, such an award "is clearly possible and is not merely theoretical." *Id.* at *4 (citing cases). The court thus agreed with the defendant that "the notice should inform recipients about the possibility that they may be responsible for court costs." *Id.*

The Court agrees with the reasoning of *Cretin-Miller* that because an award of costs is a possibility under the existing caselaw, potential class members should be informed of that possibility. The Court further concludes that including such information will not unreasonably or unfairly discourage participation in the suit, as long as costs are distinguished from a possible award of attorney fees. Accordingly, the Court **sustains** this objection by defendant, and plaintiffs are ordered to insert, at the end of the response to Question 17 in the proposed notice, the following language (modified from that required by the court in *Cretin-Miller*): "If you do not prevail on your claim, court costs and expenses (not including NPC's attorney fees) may possibly be assessed against you."

4. Defendants object as follows:

Failure to Insure Standing. The form fails to tell drivers they must have personally incurred the expenses for which they seek to recover (for example, [defendant] commonly employs students, whose expenses may be paid by a parent or guardian).

The Court **overrules** this objection. Defendant's reimbursement policy applied to its drivers without any such distinction; thus, the class properly includes all drivers at this stage. Defendant has not specifically objected to plaintiffs' proposed definition of the class.

5. In the proposed notice, the response to Question 16 includes the following statement: "But if you want your own lawyer, you may have to pay that lawyer and will have to file your own separate lawsuit." Defendant objects to that language as follows:

> <u>Misleading Threats of Costs for Different Attorneys</u>. Section 16 sugests potential plaintiffs would have to pay for legal representation if they seek other counsel. This ignores the common practice of contingency fees, and, public services available through the Department of Labor.

Plaintiffs respond that the language is accurate and helpful and is not threatening. The Court **sustains** this objection **in part**. Defendant's concern may reasonably be addressed by the substitution of "retain" for "pay" in the subject sentence, and plaintiffs are ordered to make that change to their proposed notice.

6. Defendant objects to the notice's failure to state the applicable federal minimum wage. Defendant argues that drivers need such information to determine whether they belong in the class. The Court **overrules** this objection. The class definition, which defendant did not challenge, includes all drivers, and that definition is supported by defendant's company-wide policy concerning drivers' pay rates, as discussed above.

7. Defendant argues that the consent form does not require drivers to certify

that they were paid below minimum wage. The Court **overrules** this objection. The proposed consent form mirrors those filed by plaintiffs who have already opted in, Section 216(b) requires only written consent to become a party, and defendant has not cited any authority requiring an additional certification or verification.

8. The Court **overrules** the objection by which defendant argues that one section of the notice makes misleading assurances or promises of a settlement. The notice specifically states that there is no guarantee of any recovery, and the notice as a whole is not misleading in this respect.

9. The notice states that plaintiffs' counsel is working on a contingent-fee basis and that if plaintiffs prevail, counsel may request an award of fees, which may be deducted from the recovery or paid separately by defendant or both. Defendant argues that the notice should state "whether, in the event of a judgment or settlement, counsel intends to request reasonable statutory fees, costs, and take a percentage of any recovery," such that counsel's "entire fee arrangement" is disclosed. The Court **overrules** this objection and concludes that the notice adequately informs the recipients of counsel's fee arrangement.

10. With respect to recipients who choose to join the suit, the notice states: "While this suit is pending, you may be asked to provide information to counsel for the parties." Defendant argues that the notice should specifically inform potential class members that they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in Kansas City. Plaintiffs respond that such language is

designed to "scare potential claimants from exercising their rights," and they cite cases in which such warnings were rejected.

The Court **sustains** this objection by defendant. The notice already notes the possibility of written discovery from opt-in plaintiffs. Moreover, plaintiffs have not shown that depositions of opt-in plaintiffs are so unlikely that their possibility should not be noted. Thus, the Court concludes that it is reasonable to inform potential class members that they may be required to travel to this area. The Court agrees with the following reasoning from *Cretin-Miller*:

> Despite plaintiff's concerns about the potential chilling effect, the Court is persuaded that it is reasonable and necessary to include language which informs potential participants that they may be required to travel to Kansas City. The notice already contemplates that discovery will occur and warns potential participants as much. Absent other agreement or Court orders, depositions will occur in Kansas City and participants should know that they have to travel here to participate in the suit.

*See Cretin-Miller*, 2009 WL 2058734, at *5. Accordingly, the Court orders plaintiffs to replace the sentence quoted above from the response to Question 11 in the notice with the following language, modified from language proposed by defendant: "While this suit is pending, you may be required to submit documents and written answers to questions and to testify under oath at a deposition or hearing, which may take place in Kansas City, Kansas, or Kansas City, Missouri."

11. Defendant argues that plaintiffs' proposed form does not provide "any meaningful statement of [defendant's] position, let alone an accurate description of [defendant's] defenses." Plaintiffs concede that the notice must state defendant's

position, but they argue that the notice sufficiently does so in stating, in two places, that "[defendant] denies that it improperly paid or reimbursed any current or former delivery driver, and denies that any current or former delivery driver is entitled to compensation or any other relief." Defendant proposes the addition of language stating (1) that it denies that it paid drivers below the federal minimum wage, and (2) that it believes that its reimbursements reasonably approximated the expenses drivers primarily incurred for its benefit. The Court concludes that defendant's statement of its position as proposed is reasonable and necessary to the notice. Therefore, the Court **sustains** this objection. Plaintiffs are ordered to use defendant's proposed language (found in Doc. # 153-25) for (1) the second bullet-point paragraph on the first page of the notice and (2) the response to Question 6 in the notice.

12. The Court **overrules** defendant's objection to the omission of any contact information for defendant's counsel. Defendant has not offered any reason why such information should be included in the notice sent by plaintiffs. The Court agrees with this reasoning from another court that rejected such an addition:

> Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion of those who receive the notice.

*Cryer v. Intersolutions, Inc.*, 2007 WL 1053214, at *3 (D.D.C. 2007).

13. Finally, defendant argues that the notice improperly implies "court approval of the merits," and it therefore argues that all references in the notice to the Court—including the headline on the first page of "UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF KANSAS"—be ordered stricken. The Court **overrules** this objection. Although the proposed notice states that it has been authorized by a federal court, it also expressly states that the Court has not decided the merits and that the Court has not suggested that plaintiffs will win or lose by its authorization of the notice. The Court concludes that the notice, considered in its entirety, is not misleading in this regard. *See, e.g.*, *Cretin-Miller*, 2009 WL 2058734, at *2 (overruling objection to notice's inclusion of the case caption and number).

14.     The Court also **overrules** any further objection based on defendant's proposed notice form that defendant did not support with specific argument in its brief. Except as specifically addressed above, the Court approves the notice and consent forms proposed by plaintiffs.

15.     Before sending out the notice approved herein, plaintiffs shall submit that notice form, revised from their proposed form in accordance with this order, to defendant for approval. Defendant shall have two business days from the receipt of the revised notice form in which to review the form and assert any objection that the form does not conform to this order. If any such objection is raised, the parties shall confer, and they should involve the Court only if the issue cannot be resolved.

### B.     Opt-In Period

Defendants argue that a "reasonably expeditious" opt-in period in this case would be 60 days, instead of 90 days as proposed by plaintiffs, because plaintiffs "have already engaged in substantial solicitation of participants, illustrated by their opt-in notice filings

over the 1-1/2 years," and plaintiffs have "marketed the case from day one."  Any such

solicitation efforts, however, would not be relevant to the amount of time needed to

contact drivers for whom plaintiffs are only now receiving contact information.  The

Court concludes that there is no basis for an unusually-short opt-in period in this case,[4]

and the Court agrees with plaintiffs that 90 days represents a reasonable period in which

to attempt to contact (and repeat efforts to contact, when necessary) potential class

members.  *See, e.g.*, *Gieseke*, 2006 WL 2919076, at *2 (rejecting proposed change of

opt-in period from 90 days to 60 days).  Accordingly, the Court **overrules** this objection

by defendant.

### C.    *Posting the Notice in Stores*

Plaintiffs seek an order requiring defendant to post the notice conspicuously in

the employee area of each of its stores until the opt-in period closes.  Defendant opposes

the request, arguing that providing such notice in more than 1,000 stores would be

"intrusive, costly, and overly burdensome."  Defendant argues that such posting will not

reach a wider audience than mailing, as it will not reach former employees or cure

change-of-address issues for former employees; that such posting would not provide

consent forms; that such a requirement could cause disruption in the workplace; that

defendant would be required to train store managers to address questions arising from

---

[4]Defendant's citation to *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002), is not helpful, as in that case the scheduling order provided for a 60-day opt-in period and the parties agreed that the period should be 60 days. *See id.* at 629-30.

the notices; that drivers might believe that they may transfer to store managers some responsibility concerning the submission of the consent form; and that such a requirement would open the door to questions about whether the notices were properly posted. Plaintiffs respond that courts have imposed posting requirements in other cases; that they "should not be required to expend substantial resources obtaining new contact information for putative plaintiffs who can simply review a notice posted at their workplace;" that the goal is to reach the largest number of potential class members; and that speculation of confusion in the stores from the notice is far-fetched.

The Court is not persuaded that the likely benefits from a posting requirement outweigh the likely burden on defendant from having to post the notice in so many stores. As noted by defendant, such posting does not account for the consent forms. *See Lewis v. ASAP Land Express, Inc.*, No. 07-2226, slip op. at 2 n.1 (D. Kan. June 12, 2008) (making that point in refusing to require the defendant to post the notice in its offices). Moreover, the potential class members reached by such posting—current drivers—are the same employees for whom defendant most likely has current address information. Thus, the Court concludes that mailing provides sufficient notice here and represents the most efficient means of providing notice in this case. Accordingly, the Court **denies** this request by plaintiffs at this time. If plaintiffs do encounter difficulties contacting present employees, plaintiffs may raise the issue again with the Court during the opt-in period. *See id.* (stating that the plaintiff could revisit the issue if mailing proved difficult).

## IV.    Required Information from Defendant

To facilitate the notice to putative class members, plaintiffs request an order requiring defendant to provide to plaintiffs' counsel, within 14 days, "a computer-readable data file containing the name, last known address, employee ID number, dates of employment, and restaurant store name and number" for each current and former delivery driver employed by defendant at any time during the last three years. Defendant interposes two objections to this request.

First, defendant argues that it should not be required to provide employee ID numbers, dates of employment, or store names and numbers. Defendant argues that such information is not necessary to effect the mailing; that "[t]he extra burden on [defendant] to formulate a search for the data and capture it is pointless, costly, and unduly burdensome;" and that such dissemination of information could cause privacy issues for employees. The Court **overrules** this objection **in part**. Plaintiffs have not explained why the dates of employment are needed for purposes of notice if the other information is provided, and the Court therefore declines to order defendant to provide such information. The Court agrees with plaintiffs, however, that the other information may be useful for locating and distinguishing between employees. Moreover, defendant has not explained how including employee and store identification information would add to its burden or cost in providing the employee information; nor has defendant explained how privacy issues could arise from the disclosure of employee and store ID numbers created by defendant itself (for instance, defendant has not represented that employees

26

are identified by their social security numbers).

Second, defendant argues that it should only be required to provide the employee information to the third-party administrator retained by plaintiffs to mail out the notice, and not to plaintiffs and their counsel, who might embark on a "fishing expedition" or "indulge *ex parte* influence." The Court **overrules** this objection. In the absence of any authority supporting such a limitation, such speculation does not persuade the Court to depart from the usual procedure of allowing plaintiffs and their counsel to manage the process of mailing notice to the putative class members. The Court will rely on plaintiffs' counsel's representation that they will use the information only for proper purposes.

Accordingly, the Court orders defendant to provide to plaintiffs' counsel, within 14 days of this order, a computer-readable data file containing the name, last known address, employee ID number, and restaurant store name and number for each current and former delivery driver employed by defendant at any time during the three years preceding the date of this order.

## V.  <u>Equitable Tolling</u>

Plaintiffs filed the instant motion on January 21, 2011. Defendant subsequently moved for an extension of the deadline for its response brief from February 4, 2011, to February 18, 2011. Plaintiffs responded that they did not oppose such an extension as long as the statute of limitations for potential opt-in plaintiffs were equitably tolled for

an equal period of time to account for the delay caused by the extension.  On February 10, 2011, the Court granted defendant the requested extension, concluding that defendant had shown good cause for the extension regardless of whether the statute were tolled. The Court further stated as follows:  "The Court will address plaintiffs' request for tolling when it rules on the underlying certification motion, when it may best judge whether the extension caused any delay in the resolution of the motion."

The Court now concludes that the two-week extension for defendant's response brief did *not* cause any delay in the Court's resolution of the certification motion, as the Court's schedule and docket precluded any earlier ruling.[5]  Accordingly, plaintiffs' request for equitable tolling of the statute of limitations is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' amended motion for conditional collective action certification (Doc. # 136) is **granted**, and a plaintiff opt-in class is hereby certified as set forth herein.  Plaintiffs are authorized to send out a notice, as set forth herein, to each member of the class.  Defendant is ordered to provide to plaintiff's counsel, within 14 days of this Order, information relating to members of the class as set forth herein.

IT IS FURTHER ORDERED THAT plaintiffs' counsel shall contact the

---

[5]In light of that fact, the Court need not address defendant's substantive argument that equitable tolling is not available to address a routine request for an extension.

Magistrate Judge by **April 4, 2011**, to initiate the process of setting up a scheduling conference.

IT IS SO ORDERED.

Dated this 28th day of March, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge